[Crim. No. 756. In Bank.—January 30, 1902.]

## THE PEOPLE, Respondent, v. FRANK MATTHAI, Appellant.

CRIMINAL LAW—MURDER—INSTRUCTION—PRESUMPTION OF INNOCENCE—OMISSION OF REQUEST.—The court in every criminal case ought, of its own motion, to instruct the jury as to the presumption of the innocence of the defendant until the contrary is proved; but where a defendant accused of murder omitted to request such instruction, its absence is not ground of reversal of a judgment of conviction.

ID.—BURDEN OF PROOF—REASONABLE DOUBT.—Upon a charge of murder the burden of proof is upon the prosecution to establish the fact of killing beyond a reasonable doubt; but where the killing is proved, unless the evidence for the prosecution shows facts reducing the crime to manslaughter, or justifying or excusing the homicide, the burden of proof is thrown upon the defendant to prove such facts in mitigation, justification, or excuse, sufficiently to raise a reasonable doubt as to his guilt of the offense charged.

ID.—INSTRUCTION—JUSTIFIABLE HOMICIDE—LANGUAGE OF CODE—ELABORATION NOT REQUESTED.—Where the court charged upon the subject of justifiable homicide in the language of the code, no error was committed, where the defendant did not request any further elaboration of the principles expressed.

ID.—ERRONEOUS INSTRUCTION AS TO MATTERS OF FACT—NEW TRIAL.—The court in instructing the jury should limit itself to a declaration of the principles of law necessary for their guidance in considering the evidence, and should not assume to state the evidence, unless it is all repeated. An instruction assuming facts not proved, and disputed facts, in favor of the prosecution, and predicating guilt thereon, and eliminating the consideration of the evidence favorable to the defendant, which, if believed, entitled him to an acquittal, is an instruction upon matters of fact, which invades the province of the jury, and injuriously affects the right of the accused, and entitles him to a new trial.

APPEAL from a judgment of the Superior Court of Napa County and from an order denying a new trial.   E. D. Ham, Judge.

The facts are stated in the opinion of the court.

George A. Knight, and Knight & Heggerty, for Appellant.

Tirey L. Ford, Attorney-General, and A. A. Moore, Jr., Deputy Attorney-General, for Respondent.

HENSHAW, J.—Appellant, upon an information for murder, was convicted of manslaughter, and appeals from the judgment and from the order denying him a new trial.

The homicide was admitted. It was contended that the killing was done in self-defense. For some years prior to the tragedy defendant and his family, under a claim of ownership, had been in the possession of certain mountain lands in Napa County. About a quarter of a mile from their home was a magnesite mine. They had been disturbed and harassed in their possession from time to time by locators, who entered upon the mine, contending that it was not upon the lands

owned by the Matthais, but upon an adjoining section. But in the litigation which followed the Matthais successfully defended their possession. In October George Stanley entered upon the mine and proceeded to work it, hauling from it some tons of rock. The Matthais protested and gave notice of their ownership, and Stanley discontinued his work. The Matthais remained in possession undisturbed until a certain day in the following May, when a nephew of George Stanley and another man entered upon the mine, with tent, camping equipment, and tools, erected their tent, and proceeded to dig the rock. Frank Matthai discovered that they were at work, and went to them, asserted his ownership of the property, and ordered them off the land, threatening, as the nephew testified, to shoot them if they did not leave. Returning to another mine, where the uncle, George Stanley, was, they reported to him the occurrence. The uncle told them that they had been ''bluffed off,'' and said he would go back himself with them the next day. The next morning the uncle and nephew drove in a cart to the mine. Matthai, armed with shot-gun and pistol, was sitting on a box in front of the tent. They drove up to him, and he arose and approached them, standing by the side of the cart away from George Stanley, who was driving. The nephew's narration of the occurrence was as follows: ''Matthai said, 'What right have you on this land?' My uncle said he would see. Matthai put his gun in the cart on the left side and my uncle grabbed it. It was a double-barreled breech-loader, No. 12. He put it right across the shafts. Uncle grabbed it with both hands. Matthai tried to cock the gun. I stepped out of the cart and went back eight or ten feet. Matthai tried to pull the gun away from uncle, who was then on his feet, and he then let go the gun, got overbalanced, and fell out on the ground. He fell out on the left side. Matthai then pulled his pistol and snapped it. It did not go, and the second time it shot. When uncle got up after getting out of the cart, he still had hold of the shot-gun by the muzzle. Matthai then ran back and pulled his pistol. Matthai let go of the shot-gun while my uncle was holding it, and ran back and shot my uncle in the head with the pistol. . . . Defendant said at first to uncle and me: 'Keep off this land. I will blow your damned brains out.' He did not point the gun at uncle. It was not cocked, and he said, 'What right have you on the land?' ''

Defendant's story closely corroborates this. He adds, however, that in the struggle for the possession of the gun Stanley proved to be the stronger man, and was wresting it from him when he let go and sprang back; that Stanley raised the gun as though to use it as a club to beat him with, when, in fear of death or of great bodily injury, he drew and fired his pistol.

Complaint is made that the court failed to instruct the jury, as provided by section 1096 of the Penal Code, that a defendant in a criminal action is presumed to be innocent until the contrary is proved. Section 1127 of the Penal Code provides that in charging the jury the court must state to them all matters of law necessary for their information, and assuredly the instruction as to presumption of innocence is one which should be given in every case of the court's own motion. But in this case the defendant made no request that such instruction should be given, and, as held in *People* v. *McNutt,* 93 Cal. 658, in the absence of a request, the failure of the court to charge upon any specific principle of law will not be held error.

The court charged: "Up to the moment when the killing is proved, the prosecution must make out its case beyond any reasonable doubt." Appellant detaches from its context this single sentence of the charge, and complains of it, but the instruction continued as follows: "When the killing is proved, it devolves upon the defendant to show any circumstances in mitigation to excuse or justify the homicide, by evidence on his part,—that is, the killing being proved, the defendant must make out his case in mitigation, or to excuse or justify it by some proof strong enough to create in the minds of the jury a reasonable doubt of his guilt of the offense charged, unless, as before stated, the proof on the part of the prosecution tends to show the crime committed only amounts to manslaughter, or that the defendant was justified or excused in doing the act." The whole instruction certainly presents a fair exposition of the law. As was said in *People* v. *Milner,* 122 Cal. 179: "At the close of the prosecution's case the presumption against the defendant was, that he had committed an unlawful homicide. It may not be said that the presumption of innocence countervailed against this, since by the express provision of the law the presumption of innocence was overcome, and a presumption of guilt took its place, when the required facts were proven."

The court charged upon justifiable homicide in the language of the code. If the defendant desired an elaboration of the principles there expressed, he should have proposed his instructions to that end.

Instruction 6 is as follows: "I charge you that homicide is not justifiable in defense of real property, where committed by a party claiming to own the same, which is in the peaceable possession of another, who also claims to own the same property, and where the slayer arms himself with deadly weapons and goes onto the property in dispute with the predetermination of ousting the party in possession therefrom, or killing him, if he will not leave and surrender up the possession of said property, and in pursuance of such intention kills deceased. I charge you that the killing of the deceased under such circumstances would not constitute justifiable homicide in defense of property, although the jury may find that defendant was the legal owner of said property. Therefore, if you find from the evidence beyond a reasonable doubt that some time in the month of October, 1899, deceased went on the land in dispute, and marked on said ground a mining claim by putting up stakes and notices on said claim, describing said claim and the boundaries thereof in said notices, and named said claim 'Green Mountain Mine'; that at that time said land on which said mining claim was located was not inhabited; that there was no dwelling-house thereon, and that the defendant did not occupy the same as a habitation or residence at any time prior to the homicide; that thereafter deceased went upon said mining claim peaceable, and mined said claim for a time; that on the day before the homicide the deceased had placed on said mining claim a tent and tools for the purpose of assuming mining on said claim; that on the morning of the homicide deceased went on said claim; that on the morning of the homicide deceased went on said claim unarmed, and with the intention of mining on said claim; that defendant armed himself with deadly weapons,—to wit, a loaded shot-gun and a loaded revolver,—with the predetermination of compelling said deceased to leave said mining claim immediately, or to then and there shoot deceased with said deadly weapon; that the defendant preceded deceased to said mine on the morning of the homicide; that deceased drove up to and on said mining claim in a cart unarmed; that defendant started towards the

deceased and said to the deceased, with the gun in his hands, 'Keep off this land, or I will blow your brains out,' and then and there intended to do so if deceased refused to leave said mine; that defendant came up to the cart with the said shotgun in his hands and placed the muzzle of said gun close to the body of the deceased, but not pointing directly at his body, but in a position to use the same immediately, with the intention of then and there killing the deceased if deceased did not leave said mine immediately; that deceased then and there seized the muzzle of said gun, and a struggle ensued between the defendant and the deceased over the possession of said gun; that defendant finally released his hold of said gun, and while the deceased continued to hold the muzzle of the gun defendant immediately drew his revolver and shot the deceased dead;—if you find from the evidence beyond a reasonable doubt that the defendant killed the deceased under such circumstances, then I charge you that this would not constitute justifiable homicide by defendant in defense of his property, although you may find that said Green Mountain Mine was situated on defendant's land, and not upon the land of the deceased,—for the law will not justify the real owner of the land to acquire the possession of the same from another who is in such possession peaceably under a claim of right by the use of force and violence and by the use of deadly weapons, which caused the death of the deceased.''

The court in instructing the jury should limit itself to a declaration of the principles of law necessary for their guidance in considering the evidence. It is as dangerous as it is unnecessary for the court to attempt to state the evidence. To state the evidence means to state it with fairness and exactness, and this is impracticable, unless all of the evidence in the case should be repeated. The attempt usually results, as it has in this case, in an instruction upon the facts, or upon the supposed facts, which is both argumentative and unjust,— argumentative, because the apparent opinion of the court as to the defendant's guilt can be seen thinly veiled; unjust, because of its assumption of matters either not proved, or at least in dispute,—an assumption which eliminates any consideration of the evidence favorable to the defendant, and which, coming from the court, bears most heavily against him. If the court had said to the jury in direct terms: The de-

ceased, Stanley, was in the peaceable possession of the mine which the defendant claimed to own; he was in such peaceable possession and unarmed, when the defendant armed himself with deadly weapons with the deliberate determination of compelling Stanley to leave the mine, or killing him if he did not do so, and in pursuance of this intent he went upon the property and murdered this unarmed man,—the force of the instruction could have scarcely been greater than that of the one actually given. Any assumption of a fact or facts in dispute which must be found by the jury is an infringement of their province, which injuriously affects the rights of the accused and constitutes error, for which a conviction should be reversed. (*People* v. *Messersmith,* 61 Cal. 246.) Time and again has this court felt compelled to caution trial judges against instructing in such language as may leave upon the minds of the jury the slightest indication that the court leans toward or away from the accused. In *People* v. *Williams,* 17 Cal. 142, it is said: "The court should not directly or indirectly assume the guilt of the accused, nor employ equivocal phrases which may leave such an impression. The experience of every lawyer shows .the readiness with which a jury frequently catch at intimations of the court, and the great deference which they pay to the opinions and suggestions of the presiding judge, especially in a closely balanced case, when they can thus shift the responsibility of the issue from themselves to the court. A word, a look, or a tone may sometimes in such case be of great or even controling influence. A judge cannot be too cautious in a criminal trial in avoiding all interference with the conclusions of the jury upon the facts; for of this matter under our system they are the exclusive judges." Similar language is employed in *People* v. *Hurley,* 57 Cal. 145; and in *People* v. *Lanagan,* 81 Cal. 142, it is said, "Instructions should not directly or indirectly assume or hypothetically suggest the guilt of the defendant." In the instruction in question, aside from its whole tone and tenor, it is assumed that the deceased went on the claim unarmed. No word of evidence in the record discloses that he was unarmed, and there is at least the affirmative evidence of the defendant that the deceased at the time of the shooting had possession of the gun, and was about to make use of it as a lethal weapon. Again, the undisputed evidence in the case, the evidence of the

prosecution itself, is, that when Matthai approached the cart, he placed the gun across the shafts, the gun being uncocked, and not pointing toward the body of either of the occupants of the cart. Yet the following is the language of the instruction upon this matter: "That defendant came up to the cart with the said shot-gun in his hands, and placed the muzzle of said gun close to the body of the deceased, but not pointing directly at his body, *but in a position to use the same immediately with the intention of then and there killing deceased, if deceased did not leave said mine immediately."* And again, the instruction concludes: "For the law will not justify the real owner of the land to acquire the possession of the same from another who is in such possession peaceably under a claim of right by the use of force and violence and by the use of deadly weapons, which caused the death of the deceased." Here, notwithstanding the fact that the Matthais for years before Stanley appeared upon the land had been in possession and claimed ownership of it, that for months before the homicide they had been in the exclusive possession of it, that only the day before the homicide had Stanley's men entered upon the land, and upon that same day they had been warned off and had departed,—notwithstanding the further fact, undisputed by the evidence, that Matthai was actually at the mine at the time Stanley drove up, the whole assumption of the instruction is, that Stanley, unarmed and in the peaceable possession of the property, was murdered by a hostile claimant to it.

Finally, as has been pointed out, in its assumed statement of facts no recognition is made, no credit given to defendant's own testimony, which, if believed by the jury, entitled him to an acquittal. It is clear that by reason of this instruction the defendant was deprived of that fair and impartial consideration of all the evidence in the case to which he was entitled at the hands of the jury before they rendered their verdict, and for this reason the judgment is reversed and the cause remanded.

McFarland, J., Van Dyke, J., Harrison, J., and Temple, J., concurred.

Garoutte, J., concurred in the judgment of reversal.