[Crim. No. 1074. In Bank.—May 12, 1904.]

## THE PEOPLE, Respondent, v. MARY BALKWELL, Appellant.

CRIMINAL LAW—MURDER—CRIMINAL ABORTION—SUFFICIENCY OF EVIDENCE.—Conceding that it was for the prosecution to prove that an abortion committed by the defendant charged with murder, which caused the death of the deceased, was criminal, and not necessary to preserve the life of the pregnant woman, it is sufficiently proved by evidence that the deceased was a healthy woman, nineteen years of age, unmarried, and with child, and, against the entreaty of a friend, insistently applied to the defendant to perform an abortion on her, which request was granted, and that the day after the operation she was delivered of a fœtus, and died the next day, and by the testimony of the autopsy surgeon that the death resulted from an abortion caused with criminal intent.

ID.—TESTIMONY OF FRIEND OF DECEASED—ACCOMPLICE.—A friend of the deceased, who at all times endeavored to dissuade her from having the operation performed, did not merely by accompanying her to the house of defendant, where the abortion took place, become an accomplice, whose testimony required corroboration, where she did not aid or advise the defendant, and was not present when the crime was committed.

ID.—REFUSAL OF REQUESTED INSTRUCTION—MANSLAUGHTER.—Under the facts of the case the court did not err in refusing to give a re-

quested instruction that the jury might convict the defendant of manslaughter.

ID.—INSTRUCTION AS TO "MALICE AFORETHOUGHT."—It was proper to instruct the jury that "malice aforethought, express or implied, is manifested by the doing of an unlawful and felonious act, intentionally and without legal cause or excuse," and that "it does not imply a pre-existing hatred or enmity toward the individual injured."

ID.—INSTRUCTION AS TO "INFERENCE."—It was proper to instruct the jury, in the exact language of section 1960 of the Code of Civil Procedure, that "An inference must be founded on a fact legally proved; and on such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men."

ID.—INSTRUCTION AS TO ULTIMATE FACTS.—An instruction setting before the jury in concise form a fair statement of the ultimate facts necessary for them to find in arriving at their verdict is not objectionable.

ID.—CIRCUMSTANTIAL EVIDENCE—INSTRUCTION NOT REQUESTED.—The defendant cannot complain of the failure of the court to give an instruction upon the nature and value of circumstantial evidence where no instruction on that point was requested.

ID.—DEFINITION OF ACCOMPLICE.—An instruction that to render a person an accomplice "he or she must in some manner aid or assist or participate in the criminal act," is sufficient where no more elaborate definition was requested by the defendant.

ID.—CORROBORATIVE EVIDENCE.—A charge to the jury on the subject of corroborative evidence, given in the language of section 1111 of the Penal Code, and concluding that it is sufficient "if it tends to connect the defendant with the commission of the offense," is not erroneous.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Frank J. Murphy, for Appellant.

U. S. Webb, Attorney-General, and E. B. Power, Deputy Attorney-General, for Respondent.

HENSHAW, J.—Defendant, charged with murder, was found guilty of murder in the second degree. She appeals from the judgment and from the order refusing her motion for a new trial. The specific offense of which she was found

guilty was the performing of an illegal abortion upon one Lottie Peterson, who died from the effect thereof. The evidence is sufficient to sustain the verdict of the jury.

1. The deceased, with a friend, Martha T. Byrne, to whom she had declared her condition, went to the house of defendant to have an abortion performed. When they entered the house the defendant asked which one of the girls was "up against it," and Miss. Byrne replied, "It is my lady friend," referring to deceased. The deceased then took off her hat and coat, and defendant said, "Come with me." The two left the room together, leaving Miss Byrne alone. They were gone about five minutes, and upon their return defendant said, "It is all over"; advised the deceased upon reaching home to take some medicine, not to walk too much, and if she got worse to come back upon the following Monday. The deceased then asked the defendant what her charges were, and she replied two dollars and fifty cents, which the deceased paid and then left the house with Miss Byrne. It was proved by the autopsy surgeon that an abortion had been performed upon the deceased, and that death was due to such abortion, that an instrument had been used in performing the operation, and that the operation could readily be performed in five minutes.

2. It is urged that the evidence of the people fails to show, in accordance with section 274 of the Penal Code, that the abortion was not necessary to preserve the life of the pregnant woman. There is a wide divergence of authority upon the question as to whether under a statute such as ours the burden of establishing that the abortion was actually necessary is an affirmative defense, or whether the proposition is to be negatived in the first instance by the prosecution. But conceding that it was for the prosecution to establish the fact that the operation was not necessary to preserve the life of the pregnant woman, that was sufficiently done in this instance. The evidence shows that the deceased was a healthy woman, nineteen years of age, unmarried, and with child; that she applied to defendant and solicited her to perform an abortion on her; that defendant granted the request and performed the operation; that the day after the operation she was delivered of a fœtus; that she was attacked with peritonitis, from which she died the day after such delivery.

It is further shown by the testimony of her friend, Miss
Byrne, that the latter endeavored to dissuade her from hav-
ing the operation performed, but the deceased insisted upon
it. As was said in *Hatchard* v. *State*, 79 Wis. 361, in sum-
ming up a case presenting a similar condition of facts: "The
irresistible inference from the testimony is that it was not
necessary to destroy the child to preserve the life of the
mother." Moreover, there is the affirmative evidence of the
autopsy surgeon, Dr. Bacigalupi, who, in testifying that
death was produced by an abortion,.stated that when he used
the word "abortion" he meant a case where the act was done
with criminal intent, which is in its effect a declaration that
the operation was not necessary to preserve·life.

3. It is next urged that the *corpus delicti* was not estab-
lished, and that there was absolutely no proof that the con-
ditions disclosed by the autopsy were not the result of an
accident, or of some means used without criminal intent.
But even the brief statement of the evidence above given
completely disposes of this contention.

4. It is further urged that the conviction was had upon
the uncorroborated testimony of an accomplice, Miss Byrne;
but there is no word of evidence to show that Miss Byrne was
such an accomplice. She accompanied deceased, it is true, to
the home of the defendant, where the abortion was performed,
but at all times endeavored to dissuade her from undergoing
the operation. She says: "I didn't tell her I would help
her in any way, shape, or manner to have it done. I told her
not to have it done, and that was before I went out with
her. I told her it was foolish to have it done. That all took
place before we went out there at all. I did not make any
engagement with the defendant to have this abortion per-
formed on Lottie Peterson, and I advised Lottie Peterson not
to have it done. She insisted upon having it done. I again
advised her not to have it done on Friday, when the matter
was brought up, the day we met the defendant upon the
street. I did not at any time or place in any manner what-
ever do anything toward having this operation performed.
I advised her not to have it done, but she insisted. When we
got out there I did nothing to help it or anything of that
kind." The fact that the witness, an intimate friend of the
deceased, and her confidant, accompanied her, did not place

her in the relationship of an accomplice to the crime, for, as is said in Underhill on Criminal Evidence (sec. 346) : ''Nor is a woman an accomplice, who, being an intimate friend and confidant of the deceased, knew of her pregnancy and her desire for relief, and accompanied her to the defendant's house, when she did not aid or advise the defendant, and was not present when the crime was committed.''

5. Under the facts of this case the court did not err in refusing to give an instruction to the effect that the jury might convict of manslaughter. (*People* v. *Huntington,* 138 Cal. 261.)

6. It is urged that the court in its instructions gave ''an elaborate exposition of every kind of murder except the kind charged against the defendant.'' A reading of the instructions discloses that the jury was fully and carefully instructed upon the subject of murder in all its degrees. The court instructed the jury on the definition and meaning of the phrase ''malice aforethought,'' and in the course of its instructions used the following language: ''Malice aforethought, either express or implied, is manifested by the doing of an unlawful and felonious act intentionally and without legal cause or excuse. It does not imply a pre-existing hatred or enmity toward the individual injured.'' These instructions were clearly correct in point of law.

7. Complaint is made of an instruction which charged the jury that ''An inference must be founded on a fact legally proved; and on such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men,'' etc., but as this instruction was given in the exact language of section 1960 of the Code of Civil Procedure, no just criticism can be made upon it.

8. After having instructed upon the abstract principles of law to be used in governing their determination, the court then told the jury as follows: ''It will be proper, therefore, for you, in determining the question as to whether or not the defendant in this case is guilty of murder of the second degree, to consider the following propositions: Is Lottie Peterson, the person referred to by that name in the information in this case, dead? If she be dead, did she die as the result of an act committed by some other person? If so, did she die within a year and a day from the time of the commission of

such act? If she did so die, was such act committed by the defendant in this case? If said defendant did commit such act, did she commit it willfully? If she did willfully commit such act, and it was unlawful, was it felonious?'' There is not to be perceived in this the slightest ground for objection. It set before the jury in concise form the propositions of fact which it was necessary for them to determine in favor of the prosecution beyond a reasonable doubt before a conviction would be justified. It was certainly a fair statement of the ultimate facts necessary for the jury to find in arriving at their verdict.

9. Complaint is made that the court did not instruct upon the nature and value of circumstantial evidence; but as defendant asked for no instruction upon this point, she cannot be heard to complain. (*People* v. *Haun,* 44 Cal. 96; *People* v. *Olsen,* 80 Cal. 128; *People* v. *Matthai,* 135 Cal. 442.)

10. It is complained that the court erred in defining an accomplice. The definition given was taken from Rice on Evidence (vol. 3, p. 505). The jury was told that to render a person an accomplice, ''he or she must in some manner aid or assist or participate in the criminal act.'' If the defendant had desired greater elaboration; if, for example, she had desired that the court should instruct in the language of the Penal Code, section 31, upon the definition of an accessory, she should have asked for such an instruction, but she did not. Moreover, as has been before said and shown, the witness, Miss Byrne, to whom alone this instruction could have been addressed, was in no sense either an accomplice or accessory, and the court would have been justified under the evidence in refusing all instructions upon these matters.

11. It is urged, finally, that the court's instruction upon the nature of corroborative evidence was erroneous under the authority of *People* v. *Compton,* 123 Cal. 403. In the Compton case, however, the court instructed the jury that the corroborative evidence was sufficient if it tended *in any way* to connect the defendant with the commission of the crime charged, and it was held that the instruction was erroneous in failing to take account of the essential character necessary to such corroborative evidence, which is that, standing alone, or, as it is phrased in the code, ''without the aid of the accomplice,'' it must tend to connect the defendant with the

crime.  But in the case at bar the court charged the jury in the language of section 1111 of the Penal Code, and in concluding its instruction upon this point declared that it is sufficient if it "tends to connect the defendant with the commission of the offense."  The jury in this case were not told, as they were in the Compton case, that it was sufficient if it tended *in any way,* and this last sentence is to be read in the light of section 1111 of the Penal Code, immediately preceding it, which lays down the rule as set forth in the Compton case.

For the foregoing reasons the judgment and order appealed from are affirmed.

Angellotti, J., Shaw, J., McFarland, J., Lorigan, J., and Van Dyke, J., concurred.

Rehearing denied.