[Crim. No. 7. First Appellate District.—September 15, 1905.]

## THE PEOPLE, Respondent, v. EDWARD RICHARDS, Appellant.

CRIMINAL LAW—MURDER—EVIDENCE—DEGRADING QUESTIONS—HARM-LESS CROSS-EXAMINATION.—Where a witness for the defendant charged with murder had testified on his examination in chief that he was in the habit of sitting around the saloon where the homicide occurred a great deal of the time, and that he had been arrested on a charge of vagrancy as being an idle and dissolute person, the case will not be reversed because of harmless error in permitting the prosecution on cross-examination to ask questions in regard to the same matters that did not tend more strongly to discredit or degrade the witness than the facts he had already testified to on direct examination.

ID.—TESTIMONY AT CORONER'S INQUEST—ANSWER TO QUESTION—CON-TENTION WITHOUT MERIT.—Where such witness was cross-examined on an answer given by him at the coroner's inquest, and upon objection that the whole answer should be read, the court informed the district attorney that he could use as much of it as he desired, a contention that error was committed is without merit where the district attorney read the whole answer and asked questions thereupon.

ID.—COMPROMISE VERDICT FOR MANSLAUGHTER—INADMISSIBLE AFFI-
DAVITS OF JURORS.—The affidavits of jurors are not admissible to
impeach their verdict, except when there is a resort to chance, and
it was not error to strike out affidavits of jurors that they had
voted "Not guilty" and had agreed upon a verdict of manslaughter
as matter of compromise with other jurors who had voted for differ-
ent degrees of murder.

ID.—INSTRUCTION—DUTY OF JURORS.—It was not error to instruct the
jury that "it is the duty of every juror to reason with his fellow-
jurors to the end that he may join in a lawful verdict." The in-
struction only states that which each juror is presumed to have
known. The law requires that the jury retire for deliberation,
which means careful consideration of the reasons for and against
a choice or measure.

ID.—SELF-DEFENSE—INSTRUCTIONS—BURDEN OF PROOF—REASONABLE
DOUBT.—When the defendant admitted the killing and claimed self-
defense, it was proper for the court to read as part of its charge
section 1105 of the Penal Code, that "the commission of the homi-
cide by the defendant being proved, the burden of proving circum-
stances in mitigation or that justify or excuse it devolves upon him,
unless the proof on the part of the prosecution tends to show that
the crime committed only amounts to manslaughter, or that defend-
ant was justifiable or excusable," the court having also instructed
the jury that the law does not require the defendant to establish
his defense, even by a preponderance of evidence, but that if the
evidence was such as to create in the minds of the jurors a reason-
able doubt as to the guilt of the defendant, they should acquit him.

ID.—CHALLENGE TO PANEL—POWER OF SUPERIOR JUDGES—CONSTITU-
TIONALITY OF CODE PROVISION.—A ground of challenge to the panel
that section 204 of the Code of Civil Procedure in so far as it em-
powers superior judges to draw jurors in counties having over one
hundred thousand inhabitants, and requiring the supervisors to
draw them in other counties, is unconstitutional is not tenable.
That section is constitutional and valid.

ID.—CONSTITUTIONAL LAW.—In cases of reasonable doubt the courts
will not hold an act void because unconstitutional, and practice and
acquiescence in the machinery provided for by the section in ques-
tion as to the selection of juries, for so many years, sanctioned by
the courts, furnish an almost irresistible reason for not overturning
it.

ID.—UNTENABLE GROUNDS FOR CHALLENGE.—The work delegated to the
secretary of the judges, and the qualifications of jurors on the list,
are not grounds for challenge to the panel.

ID.—DIRECTORY STATUTE—PANEL DRAWN FROM LIST OF PREVIOUS
YEAR—ERROR NOT SHOWN.—The provisions of the code as to the
selection of jurors in January of each year are directory and
are to receive a liberal construction, where the code provides that
after a list of jurors has been made and returned they shall serve

for the ''ensuing year,'' or until a new list shall be provided. No
error appears in a panel drawn from the list of the previous year,
in the absence of any showing that a new list for the current
year had been certified and filed with the clerk.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order deny-
ing a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Milton Shepardson, and R. Clark, for Appellant.

H. V. Morehouse, and forty-nine other attorneys, *Amici
Curiae,* for Appellant as to unconstitutionality of section 204
of the Code of Civil Procedure.

U. S. Webb, Attorney-General, and C. N. Post, Assistant
Attorney-General, for Respondent.

COOPER, J.—The defendant was charged with the crime
of murder and convicted of manslaughter. He made a mo-
tion for a new trial, which was denied, and this appeal is
from the judgment and the order denying said motion.

1. It is contended that it was error for the court to permit
the prosecution to ask the witness Selvaggo several questions
in cross-examination tending to show that he spent most of
his time in lounging and loafing in and around saloons and
dance-halls.

The witness had testified on direct examination that he was
in the habit of sitting around the saloon where the homicide
occurred a great deal of the time; that he had been arrested
upon a charge of vagrancy, as being an idle and dissolute
person roaming around the streets. The cross-examination
did not bring out any facts that would more strongly tend
to discredit the witness than the. facts he had already testi-
fied to on direct examination. It is always the safer and
more dignified course for the prosecution to refrain from
asking questions in cross-examination that are insulting or
that tend merely to degrade the witness. But a case will not
be reversed because of error in allowing such questions where
it is apparent that no injury was done. In this case the wit-
ness had, in direct examination, testified to substantially the

same matters that were brought out in cross-examination, and therefore he suffered no injury by the cross-examination.

2. The court did not err in striking out the affidavits of certain jurors, made for the purpose of impeaching the verdict to which they had assented.

The affidavits tended to show that, after the jurors had been deliberating for more than four hours,—some voting for murder in the first degree, some for murder in the second degree, some for manslaughter, and some for acquittal,—as the hour was getting late, and to prevent being kept out all night, it was agreed as a compromise that the jurors who had been voting for murder would vote for manslaughter, in consideration that those who had been voting for not guilty would also vote for manslaughter. The affidavit of one juror states: "That in order that another trial of said cause be not had, and to save the defendant from being convicted of murder, and purely as a compromise verdict upon said charge, the twelve jurors being unable to agree upon a verdict, affiant, and others upon said jury who believed in the innocence of the defendant upon the charge of murder, agreed to vote and did vote to convict the defendant of the crime of manslaughter."

The verdict was evidently a compromise, as many verdicts are. The jurors held different views, but finally, by mutual concessions, reached a mean between two extremes. The jurors who had voted "Not guilty," in order to save another trial and to prevent defendant from being convicted of murder, agreed to the verdict of manslaughter. The jurors who believed the defendant guilty of murder, in the language of one of the affidavits, "seeing after several ballots were taken that it was hopeless to further vote for the conviction of defendant of murder in the second degree in said cause, voted for the conviction of defendant upon the charge of manslaughter."

If a verdict could be set aside because arrived at after discussion and by way of compromise, few verdicts would stand. A juror who would not deliberate and listen to the views of his fellow-jurors would be a dangerous man to have upon a jury. While every juror should act conscientiously, and not sign or agree to a verdict that he does not approve of, yet discussion and listening to the views of others may convince

him that his first impressions were wrong and that the views of his fellow-jurors are correct. It has been universally held in this state that affidavits of jurors cannot be used to impeach their own verdict, except where the verdict is reached by a resort to the determination of chance.

The case of *Dixon* v. *Pluns,* 98 Cal. 384, [25 Am. St. Rep. 180, 33 Pac. 268], does not support appellant's contention. There, in an action for damages, the jurors agreed that each juror should write on a piece of paper the amount at which he would fix the verdict, and the aggregate of the sums thus written should be divided by twelve, and that this should be the verdict of the jury. Such verdict was clearly the result of chance. The result was uncertain and unknown, and depended to a certain degree upon the estimate of each juror, which could only be known to himself. In the case at bar each juror knew the verdict to which he agreed. No matter what influences caused him to agree to it, it was assented to by him, and was not determined by chance. If the verdict had been determined in pursuance of an agreement to abide by the result of a game of cards, a guess, or the tossing up of a coin, then affidavits of the jurors finding it would have been admissible.

3. In cross-examination of the witness Selvaggo the district attorney read to him what purported to be his answer to a question from his testimony given at the coroner's inquest, for the purpose of asking the witness if he so stated. The attorney for defendant objected to reading a part of the answer so given, and asked that the whole of the statement be read. The court informed the district attorney that he could read the portion to which he desired to call the attention of the witness. The defendant's attorney excepted to the ruling, and now urges the ruling as erroneous. Notwithstanding the ruling of the court the district attorney said: "I will give everything; I will read from the beginning." He then appears to have continued reading the balance of the answer, covering some two folios of the transcript, and questioned the witness about it. The objection was not renewed, and evidently the whole of the answer given at the coroner's inquest was read; at least it is not shown otherwise. It therefore not only appears that there was no error committed, but that the contention is entirely without merit. It

is due to the business of this court and the orderly dispatch
thereof that counsel should not insist upon error in regard
to matters of such trifling import.

4. It is claimed the court erred in instructing the jury
that ''it is the duty of every juror to reason with his fellow-
jurors to the end that he may join in a lawful verdict.'' The
instruction only stated to the jury that which each juror is
presumed to have known. The court, in the same instruction
of which the above is an extract, told the jury: ''The action
of the other jurors in their deliberation should not influence
your action as to what your verdict should be without your
judgment individually as a juror in the case is changed by
argument of your associates upon the evidence introduced
and the law as given you by the court. You are just as much
entitled to your opinion as to what the evidence and the law
warrants you in doing in this case as is any other juror in the
case, or all the others combined.''

If the contention of defendant is correct, the jurors would
not be required to reason with each other in their delibera-
tions. The law requires that the jury retire for deliberation.
(Pen. Code, secs. 1135-1138.) Deliberation means careful
consideration and examination of the reasons for and against
a choice or measure. We often speak of the deliberations of
a legislative body, of a board or council, as well as of a jury.
It was the duty of every juror to deliberate, to reflect upon,
and reason, for the purpose of joining in a lawful verdict.

5. It is claimed that the court erred in reading section
1105 of the Penal Code to the jury as part of its instructions.
The section reads: ''Upon a trial for murder, the commission
of the homicide by the defendant being proved, the burden
of proving circumstances of mitigation, or that justify or ex-
cuse it, devolves upon him, unless the proof on the part of
the prosecution tends to show that the crime committed only
amounts to manslaughter, or that defendant was justifiable
or excusable.'' It is said that the killing was admitted by
defendant, and he justified by attempting to show that it was
done in self-defense, hence that it was error to tell the jury
that in such case the burden of proof shifts to the defend-
ant. The section clearly contemplates that in case the homi-
cide is proved or admitted the burden is upon the defendant

to prove circumstances of mitigation, or that justify or excuse it, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that defendant was justifiable or excusable. And this is what the court told the jury, and was correct. (*People* v. *Hawes,* 98 Cal. 653, [33 Pac. 791]; *People* v. *Adams,* 137 Cal. 582, [70 Pac. 662]; *People* v. *Matthai,* 135 Cal. 445, [67 Pac. 694].) The court elsewhere in its charge told the jury that the law does not require the defendant to establish his defense beyond a reasonable doubt, or even by a preponderance of evidence; but that if the evidence was such as to create in the minds of the jurors a reasonable doubt as to the guilt of the defendant they should acquit him.

Other instructions and rulings are complained of; but after examination we find no prejudicial error, and it would serve no useful purpose to further discuss them.

6. Defendant's counsel have devoted over forty pages of their printed brief to a discussion and criticism of the manner of drawing the jury, and an additional brief *amici curiae* has been filed, with the names of some fifty members of the bar attached to it. We do not deem it necessary to discuss any of the points made in the brief, except the single one raised by the record in regard to the challenge to the panel.

The challenge interposed to the panel was on "the ground that no jury had been drawn, nor had any panel of jurors ever been summoned or drawn for that purpose, defendant claiming that said section 204 of the Code of Civil Procedure, in so far as it purports to confer power on said judges to draw or cause to be drawn a jury to try the defendant, is in conflict with the constitution of this state."

The section referred to provides a general rule to the effect that after the superior court in January of each year has made an order designating the number of trial jurors that will be required for the transaction of the business of the court and the trial of causes for the ensuing year, the board of supervisors shall select in the manner prescribed in sections 205 and 206 a list of persons, equal in number to that designated by the court in its order, to serve as trial jurors during the ensuing year, or until a new list of jurors

shall be provided. Then follows the provision claimed to be unconstitutional, to wit: "In counties and cities and counties having a population of one hundred thousand inhabitants or over, such selection shall be made by a majority of the judges of the superior courts." If we were considering alone the merits of the methods of selecting trial jurors, we would have no hesitation in saying that the superior judges are certainly as competent to select the list of trial jurors as the boards of supervisors. In either case the list must be made from persons who are assessed on the last preceding assessment-roll, from those who are not exempt from serving, in possession of their mental faculties, not infirm or decrepit, of fair character and approved integrity, and of sound judgment. Then if any juror shall be selected or listed who is not competent, or does not possess the necessary qualifications, he may be challenged for cause. (Code Civ. Proc., secs. 601, 602; Pen. Code, secs. 1071, 1072.)

A challenge to the panel can be founded only on a material departure from the forms prescribed in respect to the drawing and return of the jury in civil actions, or the intentional omission of the sheriff to summon one or more of the jurors drawn; and must plainly and distinctly state the facts constituting the grounds of challenge. (Pen. Code, secs. 1059, 1060.)

The challenge, being placed upon the ground that the portion of the section quoted (Code Civ. Proc., sec. 204), in so far as it purports to confer power upon the superior judges to draw a jury, is unconstitutional, we can consider no other. The questions as to the work delegated to the secretary by the judges and as to the qualifications of the jurors on the list may therefore be eliminated. In fact such matters are not the ground of a challenge to the panel. The fact that some of the jurors selected do not possess the requisite qualifications is not a ground of challenge to the panel, even if such ground had been stated in the challenge. (*People* v. *Young*, 108 Cal. 12, [41 Pac. 281]; *People* v. *Durrant*, 116 Cal. 194, [48 Pac. 75].) It is claimed that the said portion of section 204 of the Code of Civil Procedure, making it the duty of the superior judges, in counties having a population of one hundred thousand or over, to select trial jurors, contravenes section 25 of article IV of the constitution, which

prohibits the legislature from passing local or special laws;
" . . . Third—Regulating the practice of courts of justice.
. . . Thirty-third—In all other cases where a general law can
be made applicable."

In determining the question as to the constitutionality of
an act of the legislature we must remember that the legislature
is an independent part of our government. It is presumed
to have had the constitution in mind when passing the
act. It is the exponent of the popular will, and its acts must
be treated with respect, reconciled and sustained if possible.
A court is never justified in setting at naught the will of the
legislature unless it is clearly repugnant to the constitution.
In all cases of reasonable doubt the courts will not hold an
act to be void because of its being unconstitutional. (*Stockton
etc. R. R. Co.* v. *City of Stockton,* 41 Cal. 160; *University
of California* v. *Bernard,* 57 Cal. 612.)

Section 204 of the Code of Civil Procedure was amended
in May, 1876, so as to authorize the district judges of the
several districts in the city and county of San Francisco, probate
judge, and judge of the municipal criminal court, or a
majority of such judges, to select the list of trial jurors. The
section was a part of the judicial system before the adoption
of the present constitution, which provides (art. XXII, sec.
11): "All laws relating to the present judicial system of the
state shall be applicable to the judicial system created by this
constitution until changed by legislation." It has been held
that the provision of the section has virtually remained unchanged
by legislation, and has been kept in force by the
express provisions of the present constitution. (*People* v.
*Gallagher,* 55 Cal. 462; *People* v. *Durrant,* 116 Cal. 194, [48
Pac. 75].) As this construction has been placed upon the
section by the highest court in the state, and as the procedure
of selecting the list of jurors by the judges in cities and
counties having a population of one hundred thousand or over
has been followed in this state for over a quarter of a century,
we would hesitate long before holding the section unconstitutional
at this late day.

Practice and acquiescence in the machinery provided for
by the section as to selecting jurors for a period of so many
years, sanctioned by the courts, furnish an almost irresistible

reason for not now overturning it. (*Stuart* v. *Laird*, 1
Cranch, 299; *Railroad Commissioners* v. *Market-Street Ry.
Co.*, 132 Cal. 677, [64 Pac. 1065].) It has been held that the
justices' courts of the city and county of San Francisco pro-
vided for by the act of 1866 were continued in force by virtue
of the quoted section of the constitution (*Kahn* v. *Sutro*, 114
Cal. 316, [46 Pac. 87]); and the law regulating appeals from
justices' courts to the county courts was held to apply to the
superior courts. (*California Fruit etc. Co.* v. *Superior Court*,
60 Cal. 305.)

The contention is made that the jury was not drawn from
the jurors selected and listed for the year 1904.

The statute provides that an order shall be made in Janu-
ary of each year designating the number of trial jurors that
will, in the opinion of the court, be required for the trans-
action of business during the ensuing year, and such jurors
shall "serve as trial jurors during the ensuing year, or until
a new list of jurors shall be provided."

It is undoubtedly the proper construction of the section,
that in any year after the list of jurors for such year has
been ordered selected and returned, all jurors thereafter im-
paneled shall be selected from such list. It is shown by the
bill of exceptions that "No name on the present panel of this
department of the court has been drawn from the trial jury-
box of the year 1904. They were drawn from the jurors se-
lected and listed by the judges and put in the trial jury-box
for the year 1903."

The code provides that after a list of jurors has been made
and returned, they shall serve for the "ensuing year, or un-
til a new list shall be provided." It does not appear that
the list for 1904 had been certified and filed with the clerk
and the names placed in the trial jury-box, as it is provided
shall be done (Code Civ. Proc., secs. 208, 209), at the time
the panel was returned from which the jury was drawn. A
new list of jurors was not provided for the year 1904 within
the meaning of the law, until the certified list was placed in
the possession of and filed with the clerk. It is incumbent
upon the party claiming error to show it, as all presumptions
here are in favor of the lower court. We must hold the pro-
visions of the code as to selecting jurors directory, and give
them a liberal construction. A substantial compliance with

the methods laid down by the statute is all that is required.

The judgment and order are affirmed.

Hall, J., and Harrison, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 12, 1905, and a petition to have the cause heard by the supreme court after judgment in the district court of appeal, was denied by the supreme court on November 14, 1905.