[Crim. No. 5461.   Second Dist., Div. One.   Apr. 19, 1956.]

THE PEOPLE, Respondent, v. WAYNE W. HILLMAN, Appellant.

Gallagher, Madden & Hart and Ward Sullivan for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

DORAN, J.—Defendant was charged with murder. Following a jury trial he was found guilty of murder in the first degree. The verdict provided for life imprisonment. Defendant appeals from the verdict, the sentence and judgment, and also from the order denying defendant's motion for a new trial.

It is contended by appellant that, "The court erred in excluding evidence: (a) That following his wife's attempt at suicide in 1952, appellant was solicitous of her welfare and he personally cared for her and administered to her, thereby saving her life. (b) That appellant and his wife effected a reconciliation several days prior to the homicide."

"That the court erred in excluding evidence: (a) Of the medical records of the Paso Robles Hospital showing that decedent was suffering from alcoholism, psycho-neurosis and had been treated for barbiturate poisoning. (b) That on November 9, 1954, decedent's physician examined her and found her extremely depressed and agitated over both her mental and physical condition and because her husband (appellant) had not returned."

"The evidence is legally insufficient to support the verdict. The verdict is contrary to the law and the evidence."

As recited in respondent's brief, "In 1946 Wayne Hillman and Marie Hillman were married. About four months after the marriage date difficulties arose between them and from then on their marital history was punctuated by quarrels and misunderstandings. The quarrels were frequent, often violent. When Marie Hillman was given certain duties in connection with the Hillman ranch which the appellant owned

near San Luis Obispo, difficulties arose over the performance of these duties. . . .

"On January 31, 1955, at the Hillman ranch the appellant and his wife began a particularly violent quarrel. According to the appellant his wife's drinking habits were of concern to him, and he chided her about them. During the argument the appellant pushed his wife, and she fell down. Thereafter his wife left the room and Hillman finished his dinner. He went into the living room. His wife was in the bedroom lying down. The quarrel between the parties resumed, and the appellant went into the bedroom and proceeded to undress conversing with his wife all the time. During the course of the evening with the argument resuming and shutting off alternatively, appellant stated that he warned his wife to 'lay off Wayne Martin.' His wife taunted him by stating, 'You'd better look out for Johnny.' This is according to the testimony of appellant. The appellant gave his version of what then occurred and he testified that he was under the belief that his wife was reaching for a gun in the drawer of her nightstand. According to his testimony in order to beat her to the draw, so to speak, he reached into his own nightstand drawer, grabbed his own gun and shot his wife three times, killing her. Thereafter, his son, DeWayne Hillman, came in and the appellant stated, 'I just shot your mother.' Officers were called and came immediately to the Hillman ranch.

"The admissions made by appellant when arrested by the police officers were, to Deputy Sheriff Lewis Tate: 'She gave me nothing but trouble.' 'She wouldn't retract the statement and I shot her.' To Deputy Sheriff Roy Ottoson: 'I did it, and you know it has been building up for a long time, and a man can only take so much.' To Richard C. Stacey, Criminal Investigator of the District Attorney's Office: 'The pressure was building up for ten or twelve years. I couldn't stand it any longer.' "

That the deceased was a heavy drinker over the years the record establishes beyond question. It would serve no useful purpose to detail this most unusual situation.

It is sufficient to note, as recited in appellant's brief, that, "The history of their marital life was one of great discord and conflict almost from the beginning, interspersed, however, with periods of affectionate reconciliation. They quarreled violently about many things. The management of the Rolling Keys Ranch, a cattle and wheat ranch of some 6,400 acres which appellant had owned prior to his marriage to Marie,

was often a cause of dissension. Appellant accused his wife of spending too much money, of forging his name to checks, of excessive drinking of intoxicants, of relations with other men. Both Marie and appellant were heavy drinkers, and this added fuel to the fires. On a number of occasions, appellant had struck her and she had struck him. In the course of these arguments vile and obscene language was freely used by both of the parties.

"Marie's intimate friend, Josephine Shaeffer, a witness for the People, admitted that Marie was a heavy drinker and that on the several occasions when she had overheard her arguing with her husband, both had been drinking. Other evidence, established that when Marie had been drinking heavily, she was very combative and belligerent."

From a review of the record it is quite evident that the evidence fails to show a wilful, deliberate and premeditated killing. Section 189 of the Penal Code provides that, "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

█ To justify a verdict of first degree murder the evidence must be legally sufficient to show a wilful, deliberate and premeditated killing.

In *People* v. *Thomas*, 25 Cal.2d 880, 898, 899 [156 P.2d 7], these terms are defined as follows: " 'deliberate' (as an adjective) means 'formed, arrived at, or determined upon as a result of careful thought and weighing of consideration; as, a *deliberate* judgment or plan; carried on coolly and steadily, esp. according to a preconceived design; . . . Given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step; . . . Slow in action; unhurried; . . . Characterized by reflection; dispassionate; not rash.' (*Id.*) The verb 'deliberate' means 'to weigh in the mind; to consider the reasons for and against; to consider maturely; reflect upon; ponder; as, to *deliberate* a question . . . to weigh the arguments for and against a proposed course of action.' (*Id.*) It has been judicially declared that 'Deliberation means careful consideration and examination of the reasons for and against a choice or measure.' (*People* v. *Richards* (1905), 1 Cal.App. 566, 571 [82 P. 691] )"; the verb "premeditated" means "To think

on, and revolve in the mind beforehand; to contrive and design previously."

As was said in *People* v. *Nichols*, 88 Cal.App.2d 221, 228 [198 P.2d 538], "The elements of 'deliberate' and 'premeditated' not only negative the idea of hurried thoughtless action in the face of an unexpected situation, but must be said to reasonably imply some opportunity for careful thought and for the weighing of various considerations as well as the presence of some plan or design."

The evidentiary picture framed by the evidence in this case suggests reasons for and the facts of quarreling between decedent and appellant, it also shows that quarrels between appellant and his wife were followed by affectionate reconciliations and that such quarrels and reconciliations became the normal pattern of their married life. These evidentiary features leave only to conjecture and surmise the conclusion that appellant either arrived at or carved out the intention to kill as the result of a concurrence of deliberation and premeditation. And overwhelmingly opposed to such conjecture or surmise, and consistently evidenced by every circumstance, is the rationale of a tempestuous quarrel, hot anger and a violent killing. We are, therefore, of the view that the record now before us establishes murder of the second degree. We entertain a grave doubt as to its showing of murder of the first degree.

As to appellant's claim that the court erred in excluding evidence as set forth in his first two contentions above referred to, we have examined the record and the offers of proof made by appellant, and are satisfied that the rulings of the court thereon, under the circumstances present herein, were not erroneous.

The attempted appeal from the verdict and sentence is dismissed. The judgment of the court below of murder of the first degree is modified. The cause is remanded to the trial court with directions to enter a judgment against the defendant finding him guilty of murder of the second degree, and to thereupon pronounce judgment against him as prescribed by law.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied April 30, 1956, and respondent's petition for a hearing by the Supreme Court was denied May 15, 1956. Spence, J., was of the opinion that the petition should be granted.