120 Cal.Rptr.2d 379 (2002)
98 Cal.App.4th 1360
The PEOPLE, Plaintiff and Respondent,
v.
Giam Thai VU, Defendant and Appellant.
No. H022334.
Court of Appeal, Sixth District.
June 4, 2002.
Rehearing Denied July 2, 2002.
Ordered Not Officially Published August 21, 2002.[*]
*381 Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Christina V. Kuo, Supervising Deputy Attorney General, William Kuimelis, Deputy Attorney General, Attorney for the Respondent: The People.
Alan Siraco, under appointment by the Court of Appeal for Appellant, Attorney for Appellant: Giam Thai Vu.
*380 RUSHING, J.
Giam Thai Vu was charged with two counts of unlawful penetration with a foreign object (Pen.Code, § 289, subd. (a)(1)); sexual battery (Pen.Code, § 243.4, subd. (a)); making a terrorist threat (Pen.Code, § 422); rape (Pen.Code, § 261, subd. (a)(2)); forcible oral copulation (Pen.Code, § 288, subd. (c)); and first degree burglary *382 (Pen.Code, § 460, subd. (a)).[1] Vu was acquitted of forcible oral copulation and first degree burglary but convicted of the remaining charges. He was sentenced to a total of 11 years in state prison.
On appeal, Vu argues (1) his testimony and cross-examination were improperly limited; (2) the prosecutor committed misconduct when she put a nun dressed in a nun's habit on the witness stand even though the nun had no personal knowledge of Jane Doe's character for truthfulness; (3) the trial court should have sua sponte instructed the jury that sexual battery was a lesser included offense of penetration with a foreign object; (4) the trial court improperly imposed a full consecutive term on count I; and (5) the trial court improperly imposed a full consecutive term for count IV.
We conclude that the trial court should have instructed the jury that sexual battery is a lesser included offense of penetration with a foreign object and that the failure to so instruct was prejudicial. Accordingly, we will reverse the judgment.

FACTS AND PROCEDURAL BACKGROUND
Jane Doe met defendant in 1995. In 1996, the couple became engaged. In 1996, Doe ended the engagement because she believed defendant had a wife and children living in Vietnam. Although Doe continued to see defendant as a friend, she no longer wanted to be romantically involved with him.
Doe lived with her sister, brother-in-law, and two nephews in an apartment in San Jose. In mid-1996, defendant found himself without a place to live. Doe agreed to let him stay in her apartment; he was to sleep on the couch and keep his personal belongings in her bedroom. In mid-1997, defendant left Doe's apartment. By early 1999, defendant moved back in but Doe had moved downstairs to a neighbor's apartment because defendant repeatedly came to her room when she was alone.

Count I: Unlawful Penetration with a Foreign Object
On June 30, 1999, while Doe was home alone, defendant came to her apartment, asking to borrow household items. When Doe refused, defendant became angry and followed Doe to her bedroom. Defendant pushed Doe against the closet, held her against the wall, touched Doe's "vagina" through her clothes, and then put his hands under her clothes and put his fingers inside her vagina. Defendant also touched her breasts and kissed her mouth, neck, and breasts. Doe yelled at defendant and tried to push him away but defendant pushed Doe onto the bed and held her down. Frightened, Doe eventually managed to push defendant away and run to the kitchen. After defendant left, Doe did not call the police because she was afraid defendant would kill her when he got out of jail. Doe knew that the attack occurred on June 30, 1999, because that was the day she returned from a religious retreat.
On July 3 or 4, 1999, Doe's brother-in-law invited defendant to a party held at Doe's brother-in-law's apartment. When defendant became intoxicated, his friends asked Doe to talk with defendant to keep him awake. Although Doe was afraid of defendant, she spoke with him because the friends were present. Defendant told Doe that he had bought a gun. He said he would use the gun to kill Doe and then kill himself. Doe believed that defendant would kill her. She did not call the police because she was afraid of defendant.
*383 On a Friday sometime between the early July 1999 party and August 30, 1999, Doe saw defendant. Doe knew it was a Friday night because it was a night that she had a Bible study class. Defendant followed Doe into her apartment, asking to borrow a cooking pan. Defendant wanted to talk with Doe but she refused to talk with him. Defendant refused to leave when Doe asked him to go. As Doe was preparing for her Bible study class, defendant embraced her from behind, using both arms. He fondled and kissed Doe's breasts both over and under her clothes and kissed her on the mouth. Doe managed to push defendant away but he hit her on the face with his hand. Doe then hit defendant in the face and managed to push him away as he tried to strike her again. Doe told defendant to leave but he refused. The two argued and defendant told Doe that she was not supposed to yell at him. Doe began preparing for her Bible study class and defendant left. After defendant left, Doe locked the bathroom door and began taking a shower.[2]

Count IV/VI: Rape and Unlawful Penetration with a Foreign Object
While in the shower, Doe felt defendant embrace her from behind. Defendant was naked and penetrated Doe's vagina with his penis. Doe struggled and yelled but defendant had his arms around her and he pushed her down into the bathtub. Doe's head hit the bathtub as he pushed her down. Eventually Doe was able to push defendant away and his penis came out of her vagina. Defendant then put his fingers into her vagina and Doe testified that it was very painful. Yelling at defendant and calling him a monster, Doe pushed him away but defendant held her arms back and began kissing her on the breasts, mouth and vagina. As defendant attacked Doe, he told her that he wanted to get her pregnant so that she could not "escape from him." Defendant also threatened Doe, saying that if she told anyone what he had done to her he would simply say that she consented and that she would be the one to get into trouble.

Count II: Sexual Battery
A few weeks after defendant raped Doe in the shower, defendant pushed his way into Doe's apartment and began reprimanding her. Although Doe asked defendant to leave, he refused. Defendant embraced Doe. Doe yelled and tried to push defendant away but he held her so that she could not move. Defendant touched Doe's breasts and "vagina" through her clothes and pushed her to the floor. Once defendant had forced Doe down to the floor, he began pushing her clothes away and touching her breasts and vagina. Doe kicked defendant and pulled his hair but defendant told Doe he didn't care because he wanted to do "that" as a "kind of revenge" for not allowing him to come into the apartment. Defendant eventually left.

Count III: Making Terrorist Threats
Sometime after the incident above, defendant again forced his way into Doe's apartment. Defendant pushed open a locked window and jumped through. Doe ran to her bedroom, locking the bedroom door. Defendant asked Doe to open the bedroom door and told her that he could open it himself. Doe heard defendant try to open the door. Defendant threatened to damage Doe's car if she did not open the door. Defendant then shoved a kitchen knife underneath the door where Doe *384 could see it and told her that he would kill her and then himself if he got inside her bedroom. Defendant then told Doe that she would soon see his blood coming underneath the bedroom door. Doe stayed in her bedroom until she heard her brother-in-law's voice outside. By then, defendant was gone.
On August 30, 1999, Doe finally overcame her fear and called the police. San Jose Police Officer Eugene Gaines responded to Doe's apartment. Doe was trembling and crying when she spoke with Gaines. As they spoke, Doe saw defendant and became hysterical. Defendant admitted to Officer Gaines that he was upset because Doe had broken off their relationship. Defendant also admitted telling Doe that he would kill himself.
Defendant testified on direct examination that Doe broke off the engagement because she decided to become a nun. Defendant denied seeing Doe on June 30, 1999. Defendant stated that he was at the party held on July 3 or 4, 1999, but did not remember threatening to kill himself or anyone else. Defendant denied attacking Doe in the shower or threatening her with a knife.
Defendant offered three character witnesses. Phuang Anh Tran, whose brother was one of defendant's friends, testified that Doe developed a reputation for untruthfulness after defendant was arrested. Van Le testified that people in the neighborhood were upset when defendant was arrested and decided that Doe was not truthful. Le had known defendant for about one year at the time of trial. Tarn Nguyen, the daughter of Van Le, testified that people in the neighborhood began talking after defendant's arrest and decided that Doe was untruthful.
On rebuttal, three witnesses testified that Doe had a reputation for truthfulness among her colleagues at the Vietnamese catechism classes she taught on Saturdays.
Defendant was charged with two counts of unlawful penetration with a foreign object, sexual battery, making a terrorist threat, forcible oral copulation, rape and first-degree burglary.
The jury acquitted defendant of forcible oral copulation and burglary. The jury convicted defendant of two counts of unlawful penetration with a foreign object (§ 289, subd. (a)(1)); sexual battery (§ 243.4, subd. (a)); making a terrorist threat (§ 422); and rape (§ 261, subd. (a)(2)).
For the offenses of rape and unlawful penetration with a foreign object, defendant was sentenced pursuant to section 667.6. The trial court used the sexual battery offense for the principal term and imposed two years for that offense. For the offense of making a terrorist threat, the court imposed a sentence of 16 months concurrent. Three full three year terms for the rape and unlawful penetration with a foreign object offenses were imposed, consecutive to each other and to the term imposed for sexual battery. Defendant was sentenced to a total of 11 years in state prison. This appeal ensued.

DISCUSSION

I. Evidence Code section 1103, subdivision (c)(4)

Defendant contends the trial court violated Evidence Code section 1103, subdivision (c)(4) by excluding evidence that Doe told defendant prior to their engagement that she was pregnant. This argument is without merit.

Background
Under Evidence Code section 1103, subdivision (c)(4), the trial court has the discretion to admit evidence of the prior sexual *385 history of the victim. That statute provides, "If the prosecutor introduces evidence, including testimony of a witness, or the complaining witness as a witness gives testimony, and that evidence or testimony relates to the complaining witness' sexual conduct, the defendant may cross-examine the witness who gives the testimony and offer relevant evidence limited specifically to the rebuttal of the evidence introduced by the prosecutor or given by the complaining witness." (Italics added.)
At trial, defendant sought to cross-examine Doe about a statement she allegedly made to defendant prior to their engagement in which Doe told defendant that she was pregnant. Defendant also wanted to testify about this pregnancy statement. Defense counsel also said that defendant would testify that he ejaculated in the area of Doe's vagina and that the act was consensual. The prosecution objected on the grounds that the evidence was hearsay and that it was irrelevant unless the defense was consent. The trial court ultimately excluded the testimony on the grounds that it was irrelevant and highly prejudicial.

Analysis
The trial court did not violate Evidence Code section 1103, subdivision (c)(4). For the evidence to be admissible under Evidence Code section 1103, subdivision (c)(4), the prosecutor would have to have introduced evidence regarding Doe's sexual conduct. Contrary to defendant's contention, no such evidence was introduced. Doe never testified that she was a sexual innocent and the prosecution did not introduce evidence of Doe's alleged lack of sexual conduct. Doe did testify that she felt uncomfortable and ashamed talking about sexual subjects but that testimony cannot be considered to be testimony about Doe's "sexual conduct." This being the case, Evidence Code section 1103, subdivision (c)(4) was inapplicable.
Nor was the evidence admissible as a prior inconsistent statement, relevant to Doe's credibility. (Evid.Code, § 1103, subd. (c)(5); see People v. Chandler (1997) 56 Cal.App.4th 703, 707-709, 65 Cal. Rptr.2d 687.) Since Doe never testified that she was a sexual innocent and the prosecution introduced no evidence about Doe's alleged lack of sexual conduct, Doe's alleged claim of pregnancy cannot be deemed to be inconsistent with any of Doe's prior statements or conduct.
Defendant claims that Doe's testimony included repeated references to religious activities. He contends that those references were a veiled claim of sexual innocence and sexual abstinence, thereby justifying the use of the pregnancy statement to impeach Doe's credibility. We disagree.
First, that a person is religious does not mean that the person is sexually innocent or abstains from sex. That being the case, there is no logical reason why the statement regarding pregnancy would undermine Doe's credibility. In other words, it is illogical to believe that Doe's credibility would be undermined because she claimed to be both pregnant and religious. Simply put, defendant's argument is based upon a faulty premise.
Second, even if references to religious activity could be construed as implying sexual innocence or abstinence, the references in this case were too fleeting to warrant that implication. Doe only made limited reference to religious activities. She referred to a religious retreat which ended the day that defendant assaulted her; the retreat helped her fix the date of the assault. She also referred to a Bible class which helped her fix the date of the rape in the shower. On rebuttal, the prosecution *386 presented three character witnesses who knew Doe through catechism classes. We do not believe these brief religious references painted for the jury the compelling picture of sexual innocence and abstinence urged by defendant.
Third, even if we were to conclude that the references to religious activities were not too brief to warrant an implication of sexual innocence or abstinence, the references here only addressed Doe's attitude at the time defendant assaulted and raped her. No evidence indicated that Doe had these religious interests at the time she allegedly made the statement regarding pregnancy. Rather, the evidence indicated that the earliest reference to Doe's religious activities was defendant's testimony that Doe broke off the engagement and decided to become a nun. Because the statement regarding pregnancy occurred nearly a year before any religious activity, the proffered evidence did not bring Doe's credibility into question. In other words, the trial court could properly have concluded that Doe's credibility was not undermined by the fact that in early 1996 she allegedly claimed to be pregnant but by early 1997 had decided to become a nun and immerse herself in religion.
Fourth, even if the trial court could decide that a reference to pregnancy a year before Doe's immersion in religion could call Doe's credibility into question, the circumstances here were less likely to warrant a conclusion that Doe's credibility was undermined. This is because the alleged pregnancy came about, not because of intercourse, but because defendant allegedly ejaculated near Doe's vagina. Thus, even assuming that Doe's religious activities would warrant an inference of sexual innocence and abstinence, the circumstances here did not contradict that inference as strongly as defendant implies, since Doe and defendant had not actually had intercourse.
For the reasons stated above, we conclude that the trial court did not err in concluding that the evidence should be excluded.

II. Federal Constitutional Rights

Defendant contends that the trial court's decision to exclude the evidence regarding pregnancy violated his federal constitutional rights to present a defense, confront witnesses, and to due process and a fair trial. The People argue that the issue is waived because no objection on these grounds was raised below. We agree that the issue was waived. (See e.g. People v. Saunders (1993) 5 Cal.4th 580, 590, 20 Cal.Rptr.2d 638, 853 P.2d 1093; People v. Raley (1992) 2 Cal.4th 870, 892, 8 Cal.Rptr.2d 678, 830 P.2d 712.)
Even if defendant's contention was not waived, we would reject it because, as already discussed, the evidence was properly excluded. Defendant contends that the trial court's ruling applying Evidence Code section 352 to exclude the evidence deprived defendant of his constitutional rights. Contrary to defendant's argument, however, the California rules of evidence do not violate a defendant's constitutional right to present a defense. (People v. Hillhouse (2002) 27 Cal.4th 469, 496, 117 Cal.Rptr.2d 45, 40 P.3d 754; People v. Phillips (2000) 22 Cal.4th 226, 238, 92 Cal. Rptr.2d 58, 991 P.2d 145.)

III. Prosecutorial Misconduct

Defendant contends the prosecutor committed misconduct when she called as a character witness a nun, dressed in a conventional nun's habit. Defendant contends that this was misconduct because the nun did not have any personal knowledge of Doe's character for truthfulness. As we will explain, reversal is not required.

*387 Background

While defendant was testifying, defense counsel learned that the prosecution intended to call a nun as a rebuttal witness. Citing Evidence Code section 789's prohibition on the use of religion to enhance credibility, defense counsel objected to the witness testifying while wearing a nun's habit. The prosecutor stated that the nun's habit was the witness's normal clothing, that Doe spent much time in church, and that therefore the church community was the only available source of character witnesses. Overruling counsel's objections, the trial court permitted the witness to testify in her nun's habit.
The witness testified that she had known Doe for three to four years. She spoke to Doe once a week or every other week on the telephone and they met twice for lunch. She saw Doe regularly at church and at Doe's house. The witness testified that Doe was joyful, "very fun to talk to" and "made jokes a lot." When asked, "When other people talk about whether or not Jane Doe is honest, do they say she is honest?" she responded, "No, they didn't say anything." The witness elaborated that she had not "heard anything about" Doe's reputation for truthfulness. The prosecutor then withdrew the nun as a witness and the trial court ordered her testimony stricken.

Analysis
The People argue that the issue is waived because defendant did not object to the witness's testimony on the grounds of prosecutorial misconduct.
"`As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion and on the same groundthe defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.' [Citation.]" (People v. Hill (1998) 17 Cal.4th 800, 820, 72 Cal.Rptr.2d 656, 952 P.2d 673.) However, this is only a general rule. "A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.] In addition, failure to request the jury be admonished does not forfeit the issue for appeal if `"an admonition would not have cured the harm caused by the misconduct."'" (Ibid.)
In this case, defendant unsuccessfully moved to prevent the witness from wearing her nun's habit when she testified. The witness then testified, the prosecutor moved to withdraw the testimony and the trial court ordered the testimony stricken. Thus, under these circumstances, the issue should not be deemed waived. Objecting would have been futile given the trial court's earlier ruling, the fact that the prosecutor withdrew the testimony, and the fact that the trial court ordered the testimony stricken.
Did the prosecutor commit misconduct? Certainly it would be misconduct for the prosecutor to have called the nun as a witness knowing that she had no information regarding Doe's reputation for truthfulness. However, to establish a claim of misconduct, it is not necessary that the defendant show that the prosecutor acted in bad faith. (People v. Hill, supra, 17 Cal.4th at p. 822, 72 Cal.Rptr.2d 656, 952 P.2d 673.) Indeed, in People v. Hill, the California Supreme Court noted that "the term prosecutorial `misconduct' is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind. A more apt description of the transgression is prosecutorial error." (Id. at p. 823, fn. 1, 72 Cal. Rptr.2d 656, 952 P.2d 673.)
We think that this is a close case. The references to Doe's Bible study class, catechism *388 classes and other religious activities might tend to show a prosecutorial tactic of linking virtue, religion and truth, at least inconsistent with Evidence Code section 789. But calling the nun was a mistake and resulted in an obvious advantage to defendant. Besides the fact that the witness's testimony was ordered stricken, it is clear that any failure by the jury to disregard her testimony inured to defendant's benefit. The nun, the only character witness wearing a habit, was unable to testify about Doe's reputation for truthfulness. She could testify that Doe was joyful, fun to talk to, and enjoyed making jokes, but she could not testify whether Doe had a reputation for being honest. Indeed, when asked if others spoke of Doe's reputation for honesty, the witness replied, "No, they didn't say anything." We think the testimony more likely benefited defendant, rather than caused him damage. In other words, if the prosecutor was attempting to use the nun's testimony to inject religion into the trial, then that attempt backfired. The content of her testimony, the fact that the testimony was brief, and the fact that her testimony was ordered stricken all convince us that any error was not prejudicial. It is not reasonably probable that the omission from the trial of the nun's brief testimony, including her inability to state that Doe was truthful, would have resulted in a verdict more favorable to defendant. (People v. Bolton (1979) 23 Cal.3d 208, 214, 152 Cal.Rptr. 141, 589 P.2d 396.)

IV. Sexual Battery/Lesser Included Offense

Defendant argues that the trial court should have instructed on sexual battery as a lesser included offense of unlawful penetration with a foreign object. We agree and conclude that defendant's conviction must be reversed.
An offense is a lesser included offense if "either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (People v. Birks (1998) 19 Cal.4th 108, 117, 77 Cal.Rptr.2d 848, 960 P.2d 1073, italics added.) Thus, "an offense is necessarily included within a charged offense if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." (In re Giovani M. (2000) 81 Cal. App.4th 1061, 1065-1066, 97 Cal.Rptr.2d 319.)
Unlawful penetration with a foreign object is defined, in pertinent part, as "[e]very person who causes the penetration, however slight, of the genital or anal openings of any person ... for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device ... when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim ... shall be punished...." (former § 289, subdivision (a)(1).)
Sexual battery is defined, in pertinent part, as "(a) Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched or is for the purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of sexual battery." (§ 243.4, subd. (e).)
Under subdivision (e) of section 243.4, "`touches' means physical contact with the skin of another person whether accomplished *389 directly or through the clothing of the person committing the offense."
Can a person commit penetration with a foreign object without also committing sexual battery? According to the People, the answer to this question is "yes." The People contend that unlawful penetration with a foreign object can occur without the "touching" requisite in a sexual battery. Specifically, the People argue that sexual battery requires "placement of any part of the body of the perpetrator upon the skin of the victim" and that unlawful penetration with a foreign object does not require that the perpetrator use a body part to accomplish the penetration. For this reason, the People state that sexual battery is not a lesser included offense of unlawful penetration.
We disagree. We do not believe that the crime of sexual battery requires the perpetrator to use his or her "body part" to accomplish the touching. We believe that the perpetrator can accomplish the touching by using a body part or by using an object extrinsic to the body. Under this reasoning, every unlawful penetration with a foreign object will therefore also constitute a sexual battery.
In arguing to the contrary, we think the People unjustifiably believe that the requirement that the victim's skin be touched necessarily includes a requirement that the perpetrator use his/her skin or clothing to do the touching. The former propositionthat felony sexual battery requires that the skin of the victim be touchedis beyond dispute. (See People v. Elam (2001) 91 Cal.App.4th 298, 310, 110 Cal.Rptr.2d 185; People v. Dayan (1995) 34 Cal.App.4th 707, 715-716, 40 Cal. Rptr.2d 391; In re Gustavo M. (1989) 214 Cal.App.3d 1485, 1498, 263 Cal.Rptr. 328.) However, there is no case law to support the latter propositionthat the perpetrator must use his/her skin or clothing to commit a sexual battery.
To bolster their contention, the People emphasize section 243.4, subdivision (e)'s language defining a touching as "physical contact with the skin of another person whether accomplished directly or through the clothing of the person committing the offense." Under the People's view, section 243.4, subdivision (e) encompasses only (1) "direct" touchingwhere the perpetrator's skin is touching the skin of the victim's intimate part or (2) touching through the perpetrator's clothingwhere the perpetrator's clothing is touching the skin of the victim's intimate part.
Yet common sense would suggest that the perpetrator could accomplish the touching through use of an object extrinsic to the body and still commit sexual battery. For example, a perpetrator who uses an object to touch the skin of an intimate part of the victim's body is just as culpable as a perpetrator who commits the same act but does so using his or her body part. Moreover, it is undisputed that the crime of simply battery includes within its ambit both types of touching. Witkin indicates that a "direct" battery includes the perpetrator's use of his body parts as well as the perpetrator's use of an object extrinsic to his body to commit the battery. (See 1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Crimes Against the Person, § 13, p. 646["[t]he force may be directly applied, as by punching, kicking or tripping the victim. (See People v. Whalen (1954) 124 [Cal.App.]2d 713, 720, 269 P.2d 181; People v. Flummerfelt (1957) 153 [Cal.App.]2d 104, 106, 313 P.2d 912 [defendant drove automobile against victim striking him on shins, knees, and hands].) Or it may be indirectly applied, e.g., by forcing a person to jump from a window or vehicle"].) We see no reason why the type of perpetrator touchings encompassed *390 within the definition of a sexual battery should be more limited than the type of touchings encompassed within the crime of simple battery.
The People's interpretation is also contradicted by the fact that the definition of "touching" under section 243.4, subdivision (e) encompasses the scenario where a perpetrator uses another person to accomplish the touchinga situation where neither the perpetrator's body part nor clothing touches the skin of the victim's intimate part. Specifically, under section 243.4, subdivision (c), a defendant commits sexual battery if he or she causes a third person to intimately touch the victim.[3] In those circumstances, there is no physical contact between the defendant and the victim. The fact that section 243.4 includes this scenario within the definition of "touching" contradicts the People's restrictive interpretation of "touching." Further, as defendant points out, the People's position would foreclose a sexual battery conviction for a perpetrator who used his/her prosthesis to accomplish the touching.
It is unlikely that the Legislation intended the interpretation urged by the People. If the Legislature intended to require perpetrators to use either their skin or clothed skin to commit the offense, then it would have been easy for the Legislature to so specify. That the Legislature thought to use the word "skin" elsewhere within section 243.4 supports our reasoning. Subdivision (e) states that "`touches' means physical contact with the skin of another person ...." (Italics added.) Had the Legislature intended the meaning urged by the People, then one would reasonably expect subdivision (e) to provide that touches "means physical contact with the skin of another person whether accomplished with the skin or through the clothing of the person committing the offense." By not using the word "skin," and instead using the word "directly," we think it is likely that the Legislature meant to make it clear that a sexual battery can occur, as with a simple battery, not only when the perpetrator uses his/her skin to touch the victim, but also when the perpetrator uses an object to accomplish the same purpose.
"[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining that intent, we consider the statute read as a whole, harmonizing the various elements by considering each clause and section in the context of the overall statutory framework." (People v. Jenkins (1995) 10 Cal.4th 234, 246, 40 Cal.Rptr.2d 903, 893 P.2d 1224.) For the reasons stated above, and consistent with these principles, we conclude that sexual battery does not require that the perpetrator use his/her skin or clothed skin in order to commit the offense. That being the case, sexual battery is a lesser included offense of unlawful penetration with a foreign object.
According to the People, even if sexual battery is a lesser included offense of penetration with a foreign object, no instruction was necessary because there was no evidence to support the instruction. The People state that Doe testified that defendant put his fingers inside her vagina while defendant testified that he did not even *391 see Doe on the date of the alleged incident. Thus, the People claim the evidence did not support a sexual battery middle ground: either the jury believed Doe or the jury believed defendant.
"A trial court must instruct on a lesser included offense `only if there is substantial evidence to support a jury's determination that the defendant was in fact only guilty of the lesser offense.'" {People v. Williams (1997) 16 Cal.4th 153, 227, 66 Cal.Rptr.2d 123, 940 P.2d 710, quotation marks and citation omitted.) "`Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.'" (People v. Flannel (1979) 25 Cal.3d 668, 685, 160 Cal.Rptr. 84, 603 P.2d 1.) "[T]here is no obligation to instruct on included offenses unless there is some evidence, not merely minimal or insubstantial evidence but evidence from which a jury could reasonably conclude, that the offense was less than that charged." (People v. Jones (1992) 2 Cal.App.4th 867, 870, 3 Cal.Rptr.2d 602.)
In this case, Doe's testimony was equivocal regarding the events of June 30, 1999. She testified that defendant did put his finger inside her vagina but she also testified that his fingers "did not go inside." Thus, there was evidence to support a sexual battery instruction. We believe that a jury comprised of reasonable persons "could conclude" that sexual battery, rather than unlawful penetration with a foreign object, was committed. (See People v. Breverman (1998) 19 Cal.4th 142, 177, 77 Cal.Rptr.2d 870, 960 P.2d 1094.)
Finally, the People argue that even if a sexual battery instruction was required, the failure to give one was harmless. We disagree.
According to the California Supreme Court, "the failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility ... such misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." (People v. Breverman, supra, 19 Cal.4th at p. 165, 77 Cal.Rptr.2d 870, 960 P.2d 1094.)
As already noted, Doe's testimony regarding the events of June 30, 1999, was equivocal. She stated that defendant did penetrate her vagina with his finger. However, she also testified that no penetration occurred. Specifically, she said that the defendant "did not go deep inside. Only outside." She also stated that defendant's fingers "Did not go inside the vagina." Further, in response to the prosecutor's question, "Does that mean [defendant's fingers] did not go inside at all?" Doe replied, "Yeah, it's correct." This inconsistency reasonably could have led the jury to conclude that defendant committed a sexual offense but did not commit one involving unlawful penetration with a foreign object. The fact that defendant was acquitted of burglary and forcible oral copulation also indicates that the jury did not completely accept Doe's testimony, thereby also suggesting that the jury could plausibly have concluded that defendant was only guilty of sexual battery, rather than unlawful penetration with a foreign object. We also note that the lesser offense instructions (assault, battery) that were submitted regarding this count were inadequate; the evidence clearly demonstrated the sexual nature of the offense. We conclude that it is reasonably probable that a different result would have occurred had the jury been instructed on sexual battery. (People v. Breverman, supra, 19 Cal.4th at p. 165, 77 Cal.Rptr.2d 870, 960 P.2d 1094.)

V. Consecutive Term on Count I

Defendant argues that it was improper to impose a full consecutive term under *392 section 667.6, subdivision (d) for the unlawful penetration with a foreign object offense charged in count I. He claims it violated his constitutional right to due process under Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. We have already concluded that defendant's count I conviction should be reversed and therefore we need not address defendant's contention that he was improperly sentenced on that count.

VI. Full Consecutive Term on Count TV

The trial court imposed a full consecutive term for defendant's rape conviction on the grounds that the crime was accomplished through the use of violence. Defendant contends the consecutive term was not justified because the record contains no substantial evidence that he used more force than was minimally necessary for the completion of the rape. We disagree.
Under section 667.6, subdivision (c), a full consecutive term may be imposed for each of the enumerated offenses if they are accomplished by force, violence, duress, menace, or fear of immediate and unlawful bodily injury. At sentencing, the trial court stated, "I'm going to find that they should be sentenced consecutively and that is the court's decision based upon the factors which the court has considered. The primary aggravating factor that is the basis for the court's consecutive sentence on those counts is the violence of the conduct that was involved in these incidents and particularly the incidents in counts four and six, and based upon that violent conduct on that or in connection with the same incident, the court is going to find that that outweighs the mitigating factor [of lack of criminal history] that the court indicated earlier."
There was substantial evidence to support the trial court's conclusion that the rape in the shower involved more force than was minimally necessary for the completion of the crime. There was evidence that defendant broke into the locked bathroom and grabbed Doe from behind while she showered. Doe struggled and yelled but defendant pinned her arms. During the struggle, defendant pushed Doe into the bathtub, causing her to hit her head. This was enough evidence to support the trial court's conclusion that the rape involved more violence than was minimally necessary to commit the crime. (See People v. Bergschneider (1989) 211 Cal.App.3d 144, 153, 259 Cal.Rptr. 219 [defendant's "acts in pushing aside [victim's] hands constituted force greater than that necessary to accomplish the act of intercourse itself'].)

DISPOSITION
The judgment is reversed. The matter is remanded for possible retrial on count I. If the prosecution elects not to retry count I, or at the conclusion of retrial, the court shall sentence the defendant.
WE CONCUR: BAMATTRE-MANOUKIAN, Acting P.J., and MIHARA, J.
NOTES
[*] The Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977.)
[1] All further unspecified statutory references are to the Penal Code.
[2] San Jose Police Officer Barbara Melloch testified that the lock was easily opened with any sharp object.
[3] Section 243.4, subdivision (c) states that "(c) Any person who, for the purpose of sexual arousal, sexual gratification, or sexual abuse, causes another, against that person's will while that person is unlawfully restrained either by the accused or an accomplice, or is institutionalized for medical treatment and is seriously disabled or medically incapacitated, to masturbate or touch an intimate part of either of those persons or a third person, is guilty of sexual battery."