[Crim. No. 5064.  Second Dist., Div. One.   Apr. 26, 1954.]

THE PEOPLE, Respondent, v. JACK WHALEN et al., Appellants.

Leonard Wilson, Bentley M. Harris and George R. Perkovich for Appellants.

Edmund G. Brown, Attorney General, and Lester Ziffren, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, Jack Whalen, Sam Solowitz, Roger Matthews and Julian Kranzberg were accused

in Count I of the offense of assault by means of force likely to produce great bodily injury, a felony (Pen. Code, § 245), and in the second count defendants were charged with the crime of attempted extortion (Pen. Code, § 524).

At the time of arraignment each defendant made a motion to dismiss pursuant to the provisions of section 995 of the Penal Code. As to defendants Solowitz and Kranzberg, the motion was granted only as to Count II, but as to the remaining defendants, was denied as to each count.

Following pleas of not guilty the cause proceeded to trial before a jury resulting in verdicts finding all defendants guilty of assault, a misdemeanor, a lessor but necessarily included offense in that charged in Count I of the information. As to defendants Whalen and Matthews, they were also found guilty of attempted extortion as charged in Count II. Defendants Whalen and Solowitz filed a motion for a new trial which was denied.

As to defendant Whalen, proceedings on Count II were suspended, and probation was granted for a period of five years on condition that he serve a term of 150 days in the county jail. As to Count I, defendant Whalen's application for probation was denied and he was sentenced to serve 30 days in the county jail, said sentence to run concurrently with the jail sentence imposed as a condition of probation on Count II.

In the case of defendant Solowitz, who was convicted only under Count I, the proceedings were suspended and he was granted probation for a period of three years, one of the conditions thereof being that he serve the first 20 days of such period in the county jail.

From the judgment of conviction and from the order denying their motions for a new trial, defendants Whalen and Solowitz alone prosecute this appeal.

On appeal following a conviction in a criminal case we are required to view the evidence in the light most favorable to respondent, and the existence of every fact which the jury could have reasonably deduced from the evidence must be assumed (*People* v. *Newland,* 15 Cal.2d 678, 681, 682 [104 P.2d 778]; *People* v. *Reese,* 65 Cal.App.2d 329, 337 [150 P.2d 571]). Bearing in mind this rule, we consider the following a fair epitome of the evidence forming the factual background of this prosecution.

At about 5 o'clock on the evening of October 9, 1952, John Anton, the complaining witness, was leaving the Hollywood

Post Office when he heard someone call "John." On turning around he encountered defendants Whalen, Matthews and Solowitz, who approached him.

Anton was unacquainted with defendants Whalen and Solowitz, but had known defendant Matthews for approximately a year. The aforesaid three defendants walked directly up to Anton and Matthews took hold of Anton's left upper arm and grabbed his shirt, while Whalen held Anton's right arm, and they pushed him against one of the closed windows at the post office. Defendant Matthews demanded $15 for a bet that defendant Whalen had made with Mathews for Anton. The latter denied owing any money to defendants and denied knowledge as to anyone calling Matthews on Anton's behalf. Whalen then asked if Anton had any money in his pockets and when the latter responded that was none of Whalen's business, Whalen replied, "We are going to go into your pocket and get this $15.00." After he reiterated his ignorance as to the alleged call to Matthews or the $15 transaction, Anton warned defendants that he was going to call the police. Anton then shook himself loose and walked over to one of the clerk's windows at the post office. Prior thereto defendant Matthews, with his fist, hit Anton in the upper left arm.

Complaining witness obtained some change from the clerk at the post office and as he was proceeding to the telephone he was stopped by defendants Matthews and Whalen and the latter told Anton, "If you call the police, I will kill you. You will never get out of here." Anton requested that he be left alone, otherwise he would call the police.

He then went to the telephone with Whalen and Matthews following him. He was about to call the operator to ask for the police department when Whalen again told him, "I am not kidding. If you call the police, you will never get out of here alive. There is a man standing at the door." Anton then noticed defendant Solowitz at the entrance to the building and Whalen advised that Solowitz ". . . is one of our men, and if you know what is good for you, you will not make any calls." Anton then responded that if he were left alone, he would not call the police.

Then Anton walked out of the building with defendants Whalen, Matthews and Solowitz following.

Outside the post office, Matthews repeated the demand for the $15 which Anton again insisted he did not owe. Whalen then told Anton that the former would give him one week

to deliver the $15 to defendant Kranzberg at the Mark Twain Hotel. Again Whalen admonished Anton, "If you don't deliver it to him, (Kranzberg) I will catch you in an alley with no witnesses and I will give you such a going over you will remember me forever." When Anton replied he would go to the police if defendant did not desist from his threats, Whalen responded, "If you go to the police I will kill you." Thereupon Anton went to the Hollywood Y.M.C.A.

At approximately 7 p.m. that evening, Anton went to the Mark Twain Hotel to talk to defendant Kranzberg. As he entered the hotel, he saw Kranzberg behind the desk in the lobby of the hotel and saw defendant Solowitz, leaning against the telephone booth in the lobby. Anton told Kranzberg of the other defendants' request to have Anton deliver $15, but Kranzberg denied that Anton owed him any money.

When Anton asked why the defendants at the post office had threatened his life, Kranzberg remarked, "We had better take care of you right now." Thereupon Kranzberg made an inside telephone call and Whalen appeared. Whalen "pushed (Anton) at the desk" and hit him ". . . right in between the eyes." Anton staggered back against the telephone booth and against Solowitz when he felt a very sharp blow on the right side of his head. At this point, with Solowitz holding Anton's left arm and Kranzberg holding his right arm, Anton was held against the telephone booth and Whalen and Matthews continued for approximately one minute to hit and strike Anton with about 10 blows mostly in his face, as well as kicking him on the left shin. Then Whalen advised, "Let's get him (Anton) outside and really finish him off." Kranzberg agreed to this suggestion, adding, "I don't want any evidence in the lobby."

At this point someone approached the entrance to the hotel and Anton heard people talking, whereupon Kranzberg told the other defendants, "You had better get out of here, and fast." Whalen again admonished Anton that if the latter reported anything ". . . about this to the police" Whalen would kill him.

Anton, with his right ear, mouth and nose bleeding, went to a washroom at the back of the desk to obtain a wet towel in an effort to stop the bleeding. As he came out of the washroom and returned to the scene, Kranzberg was observed wiping blood around the lobby but the other three defendants had departed.

As a result of the above mentioned encounter the complainant suffered a chipped front tooth, a bruise on his left shin, lumps on the right side of his head, a swollen nose, and his face was "badly beaten up." He also suffered pain in the left side of his chest, as well as from internal bleeding. For some three or four weeks after the assault the victim continued to expectorate and swallow blood. On October 10, 1952, two police officers took Anton to the receiving hospital, where, following examination, he was advised to consult his private physician. Thereafter, he was treated by his physician for the injuries above set forth.

Approximately a week prior to the preliminary examination, defendants Whalen and Matthews approached Anton in a restaurant. After asking him about his health, defendants inquired why he had not gone to defendants, who ". . . would have taken care of your doctor bill." Whalen, after expressing his dislike for the police, further admonished Anton, "Well, you know, if you know what is good for you, you're not going to testify against us next Wednesday." When Anton indicated he was going to testify, Whalen reiterated, "If you do, I will take care of you but good!" Defendant Matthews, at the same time, also advised Anton, "If you testify against (us) next week, we are going to get you really beat you up better than the last time."

The complaining witness denied that he struck any of the defendants in the hotel, or on any other occasion. He admitted he had placed a $2.00 bet with defendants Matthews and Kranzberg several months prior to the date of the alleged assault.

William W. Flannagan, a clerk at the Hollywood Post Office, testified he saw the complainant at the post office about 5 o'clock on the afternoon of October 9, 1952; that he heard him say "Call the police." Shortly thereafter he saw Anton dialing the telephone at the post office with Whalen and Matthews within a few feet of him. He heard a brief discussion in which Anton stated he did not know defendants and inquired as to what they wanted. Flannagan then saw all parties leave the post office, including another person who was standing in the corner of the building during the incident. He did not see the parties prior to the telephone incident nor did he see any defendants touch Anton.

Police Officer Richard S. Williams testified to the injuries and appearance of Anton on October 10, 1952, and as to taking the latter to the receiving hospital.

Testifying in his own behalf, defendant Solowitz denied being present at the Hollywood Post Office on October 9, 1952, but admitted being present at the Mark Twain Hotel when the altercation therein took place. The witness testified that when the complainant entered the hotel he started an argument with defendant Kranzberg, the clerk behind the desk. That defendant Whalen came into the lobby and inquired as to the noise, whereupon, Anton replied that ". . . it is none . . . of . . . (Whalen's) business" and thereupon Anton swung at and struck Whalen in his face. Whalen, thereupon, swung back and hit Anton in the face. During this altercation, Solowitz stated, neither did he nor Matthews, who were conversing with each other at the time, nor Kranzberg participate in the incident at all.

Defendant Matthews testified as to the complaining witness requesting him to place a bet. That he replied he had no way to place the wager, but that defendant Whalen, who overheard the conversation, indicated he would place the bet. That Anton agreed to deliver the money at a stated time, whereupon, defendant Whalen said he would place the bet. The witness admitted being at the post office on October 9, with defendant Whalen, that they observed the complaining witness, that he, the witness, accosted Anton, enquired with reference to payment of the foregoing wager. That Anton said he would pay it in about a week. Defendant Matthews denied seeing defendant Solowitz at the post office and denied that either he or defendant Whalen made any threats against Anton. Defendant Matthews testified substantially the same as defendant Solowitz regarding the aforesaid occurrence at the Mark Twain Hotel.

Defendant Whalen testified in substance as did defendant Matthews concerning the happenings at the post office as well as to the incident at the hotel.

### Appeal of Defendant Solowitz

This appellant was convicted only of the crime of assault, a misdemeanor, (Pen. Code, § 240). He maintains that the evidence is insufficient as a matter of law to establish his guilt of an assault. He asserts that the necessary elements of an unlawful attempt, coupled with present ability to commit a violent injury on the person of another (Pen. Code, § 240) were not present.

Under the facts and circumstances shown in evidence this claim is untenable. The record discloses evidence that at

the hotel while defendants Matthews and Whalen were assailing the complainant, appellant Solowitz was holding one of the latter's arms thereby aiding the assailants in their assault upon the complainant and preventing the latter from defending himself. ■ The fact that appellant Solowitz merely restrained the victim without striking him is of no consequence because in aiding and abetting the other assailants in an assault, appellant Solowitz became a principal in the commission of the crime (Pen. Code, § 31). ■ It is also in evidence that shortly before the complaining witness was assaulted as above described, appellant Whalen had struck the former, causing him to stagger back against appellant Solowitz, at which time the complainant felt a very sharp blow on his head. Under the circumstances disclosed by the record, the jury could reasonably have concluded that it was appellant Solowitz who struck this blow. ■ Keeping in mind that the word "violent" as used in section 240 of the Penal Code defining an assault, has been held not to be synonymous with "bodily harm," but to include any wrongful act committed by means of physical force against the person of another, and that the kind of physical force is immaterial (*People* v. *Bumbaugh,* 48 Cal.App.2d 791, 796 [120 P.2d 703]), it is manifest, in view of the injuries suffered by the complainant, as well as the manner of the assault made upon him, that the jury was authorized to conclude that the assault was an unlawful attempt coupled with present ability to commit a violent injury upon the person of the complaining witness. As was said in *People* v. *Bradbury,* 151 Cal. 675, 676 [91 P. 497], "The term 'violence' as used here is synonymous with 'physical force' and in relation to assaults the two terms are used interchangeably."

The case of *People* v. *McCoy* (Cal.App.), 147 P.2d 54, strongly relied upon by appellant, is of little or no assistance to him, because a petition for hearing in the Supreme Court was granted, and upon its reconsideration of the case that court held that the evidence was amply sufficient to justify the verdict and the judgment of conviction was affirmed (*People* v. *McCoy,* 25 Cal.2d 177, 196 [153 P.2d 315]).

Appellant's contention that the testimony of the complainant was in conflict with that given by other witnesses is unavailing. ■ Upon appeal we are not authorized to reweigh the evidence and resolve conflicts therein in favor of the accused. ■ It is settled beyond controversy that

the matter of credibility of witnesses and the weight to be given their testimony are matters committed to the duly constituted arbiter of the facts. ■ And where there, is present in the record evidence tending to support a verdict an appellate tribunal cannot disturb the verdict upon the ground that it is not sustained by the evidence.

### Appeal of Defendant Whalen

It is not contended in the case of this appellant that the evidence is insufficient to sustain his conviction of simple assault (Count I) and attempted extortion (Count II). The "chief error" upon which he relies is that the trial court erred in failing to specifically instruct the jury on the difference between "mere participation" and "attempt." Although appellant at no time requested such an instruction, it is his claim that the court was required to give the same of its own motion.

■ It is true that in a criminal case it is the duty of the trial court to give *sua sponte,* instructions on the general principles of law applicable to the case. Accordingly, it has been held that the court of its own motion must instruct the jury in criminal cases with respect to accomplices and their testimony (*People* v. *Warren,* 16 Cal.2d 103 [104 P.2d 1024] ; *People* v. *Heddens,* 12 Cal.App.2d 245 [55 P.2d 230]), corroborative evidence in cases involving the obtaining of money by false pretenses (*People* v. *Curran,* 24 Cal.App.2d 673 [75 P.2d 1090]), testimony of expert witnesses (*People* v. *Williamson,* 134 Cal.App. 775 [26 P.2d 681]), admission of confessions and the necessity of independent proof of the *corpus delicti* (*People* v. *Frey,* 165 Cal. 140 [131 P. 127]) ; definitions of manslaughter in prosecutions for murder where the evidence may sustain a verdict of manslaughter (*People* v. *Manzo,* 9 Cal.2d 594 [72 P.2d 119]), and presumption of innocence and burden of proof (*People* v. *Matthai,* 135 Cal. 442 [67 P. 694] ; *People* v. *Soldavini,* 45 Cal.App.2d 460 [114 P.2d 415]). This rule does not apply however, to instructions which do not cover broad, general principles or where the necessity for an instruction is not developed through the evidence introduced at the trial, thus making it vital to a proper consideration of the evidence by the jury. And the rule does not apply where the omitted instruction would amount to but a mere refinement of the other instructions given.

■ In the instant case the court did instruct the jury on the definition of and the elements involved in the offense charged against appellant Whalen. After admonishing the jury in various instructions as to the crime of extortion, the court instructed on attempted extortion, and in the last paragraph thereof told the jury, ''The difference between actual extortion and attempt to extort obviously lies in the results obtained; and if one uses a threat such as I have specified with the intent and for the purpose that I have specified, he is guilty of attempt to extort, although he fails to induce any fear in the mind of the other person or fails to obtain any money or property as a result of the attempt.''

This instruction coupled with others given contained all the elements of the offense charged. If appellant Whalen desired a more elaborate exposition of the difference between preparation or intention and attempt he should have requested a special instruction on the subject.

■ Furthermore, an instruction on the difference between ''preparation'' and ''attempt'' was not warranted because the evidence herein showed conclusively that appellant's conduct had gone far beyond the preparatory stage, and estabilshed a commencement of the criminal act through uttered threats toward and actual assault upon the victim. Under the facts of this case it is manifest that the court was not required to give the suggested instruction, at least on its own motion.

Appellant Solowitz appeals from the judgment and the order denying his motion for a new trial on Count I. No judgment was pronounced, proceedings being suspended and conditional probation granted. But under the provisions of section 1237 of the Penal Code, as amended in 1951, an order granting probation ''shall be deemed to be a final judgment within the meaning of this section.''

As to defendant Solowitz, the order granting probation and the order denying his motion for a new trial, are and each is affirmed.

Defendant Whalen appeals from the judgment and from the order denying his motion for a new trial on Counts I and II.

As to Count I, a judgment was pronounced, but as to Count II, proceedings were suspended and conditional probation granted.

As to defendant Whalen, the judgment and the order denying his motion for a new trial as to Count I are, and

each is affirmed. The order granting probation and the order denying defendant Whalen's motion for a new trial on Count II are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.