56 Cal.Rptr.3d 444 (2007)
148 Cal.App.4th 1311
The PEOPLE, Plaintiff and Respondent,
v.
Darryl George ROSEN, Defendant and Appellant.
No. C048139.
Court of Appeal of California, Third District.
March 27, 2007.
*446 Charles M. Bonneau for Defendant and Appellant.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Senior Assistant Attorney General, John G. McLean and Melissa Lipon, Deputy Attorneys General, for Plaintiff and Respondent.
Jan Scully, District Attorney (Sacramento) and Michael A. Neves, Deputy District Attorney (Sacramento) as Amicus Curiae.
Certified for Partial Publication.[*]
*445 SCOTLAND, P.J.
Rather than uphold the law, as was his charge, defendant Darryl George Rosen disrespected both his badge and the women he sexually abused while on duty as a police officer. A jury convicted defendant of four counts of sexual battery, four counts of assault by a public officer, two counts of false imprisonment, and one count of attempting to dissuade a witness. The trial court sentenced him to state prison for an aggregate term of nine years and eight months. He appeals.
In the published parts of our opinion, we reject his claims that (1) the trial court erred in allowing introduction of evidence of uncharged sexual assaults committed by defendant, and (2) because one victim touched defendant, at his direction, rather than he touch her, defendant could not be convicted of assault by a public officer against that victim.
When a defendant is accused of a sexual offense, Evidence Code section 1108 allows the introduction of evidence of the defendant's commission of other sexual offenses, unless the trial court excludes the evidence on the ground its probative value is outweighed by the probability that presenting the evidence would require an undue consumption of time or would create a substantial danger of undue prejudice to the defendant, confuse the issue, or mislead the jury. We find no merit in defendant's view that the prosecutor's decision not to formally charge him with committing the other sexual offenses necessarily means that the evidence was not sufficiently reliable to be used against him. As we will explain, not only is defendant's premise unsound, it would negate the provisions of Evidence Code section 1108. Also without merit is his claim that evidence of other sexual offenses is not admissible under this statute unless the prosecutor presents expert testimony that the evidence shows the defendant's predisposition to commit sex crimes. For reasons that follow, we conclude the statute does not require expert testimony, nor is such a requirement otherwise necessary.
*447 In another novel contention lacking merit, defendant argues the evidence does not support his conviction for assaulting S.M. under color of authority and without legal necessity. (Pen.Code, § 149.) In his view, he did not commit an assault because he made no effort to touch S.M.; instead, she did the touching when she complied with his direction to "grab [his] dick." As explained in more detail below, because he coerced the victim to engage in an unconsented touching of a part of her body to his, defendant was guilty of assault by a public officer even though he did not do the touching.
In the unpublished parts of our opinion, we address defendant's other claims of error.

FACTS
In 2000 and 2001, defendant was an officer of the Sacramento Police Department.
Between October 2000 and December 2001, defendant and other officers came to S.D.'s house many times to conduct drug searches while S.D.'s mother was on searchable probation. On one occasion, defendant took S.D. into the kitchen, closed the door, commented about how large her breasts were, and asked if he could suck them. He then ran his hand across her chest. On another occasion, defendant took S.D. into the garage of her home. Having earlier given S.D. his telephone number, he asked why she had not called him. Then, saying he had to make sure that she did not have any drugs on her, defendant ordered S.D. to lift her bra and "shake it out." She complied. Telling her that she "had some big ass titties and he wanted to suck them," he lifted her t-shirt and started "playing with [her] nipples." On a third occasion, defendant took S.D. into a bedroom of her home and closed the door. Again asking why she had not called him, he said how much he wanted to "fuck" her. He then took S.D.'s hand and rubbed it across his penis over his pants.
Based on these facts, defendant was convicted of misdemeanor sexual battery of S.D. for the first incident, felony sexual battery for the second incident, and assault by a public officer for the third incident.
While S.M. was working as a prostitute one evening in 2001, defendant drove up to her and told her to come over to his patrol car. He was wearing his police uniform and badge. Defendant told S.M. to stick her head in the car and she did so. He then said, "grab my dick." She complied because she did not want to go to jail. S.M. rubbed defendant's penis over his pants and, when she stopped, he told her to "keep doing it." She continued to rub defendant. When S.M. finally stopped rubbing defendant's penis, he told her he wanted to "fuck [her] doggie style."
Based on these facts, defendant was convicted of assault by a public officer on S.M. and false imprisonment.
One day in the summer of 2001, an argument broke out at L.M.'s house, and police were summoned. The call for help falsely reported that a gun was involved in the dispute. Defendant and other police officers responded, and persons in the dispute fled from the scene. Eventually, all the officers left except defendant, who spoke with L.M. While talking with her, defendant said that he wanted to "fuck" her but that he was not going to "pay" for it. L.M. assumed he believed she was a prostitute, like her friend who was at the scene. Telling L.M. to call him if she wanted to go out on a date, defendant gave her his business card and wrote down the telephone number where he could be reached. L.M. was "shocked" by the encounter but "just kinda brushed it off' and *448 went back to her home. Later that evening, defendant returned in his patrol car, wearing his police uniform and badge. L.M.'s female friend, S.S., who had been a prostitute, went out and spoke with defendant. He asked about L.M. and wanted to know whether S.S. had "fucked" her. While S.S. was standing next to the patrol car, defendant grabbed her hand, put it on his penis over his pants, and asked her if she "liked this nice hard dick." He then told S.S. to go inside and send L.M. out. L.M. complied and, as she stood by the open window of the patrol car, defendant grabbed her hand and put it on his penis over his pants. L.M. "snatched back" and returned to the house.
Based on these facts, defendant was convicted of assault by a public officer on L.M. and false imprisonment.
On June 29, 2001, defendant and two other police officers conducted a probation search of the motel room where 16-year-old D.C. and her mother were living. Discovering that D.C. had an outstanding warrant for her arrest, defendant handcuffed her and put her in his patrol car. While driving her to juvenile hall, defendant asked D.C. if she had a boyfriend. Although she replied that she is a lesbian, defendant asked her if she liked "big dick." She did not respond. Defendant eventually stopped the patrol car and asked if she was scared. He then got out of the car, opened the rear door on the other side, and placed his gun on top of the patrol car. When D.C. asked what he was doing, defendant reached in and put his hand under her shirt and bra and rubbed her breast. D.C. yelled at defendant to stop, but he put his hand down her pants and onto her vagina. Eventually, defendant took off his utility belt, pulled D.C.'s pants off and climbed on top of her. Although she screamed and tried to kick him off, he succeeded in getting his penis inside her vagina. He then got out of the car, grabbed his utility belt and gun, got back in the front seat, and drove off. During the remaining journey, defendant told D.C. not to tell anyone what he had done, saying he had "all [of her] information," which she took as a threat. When they arrived at juvenile hall, defendant told D.C. he would be waiting for her when she got out. She took this as a threat as well. When defendant took D.C. out of the car, he got behind her, bent her cuffed hands up, and told her to "grab his dick." She complied. After they entered the building and he was taking D.C. for fingerprinting, defendant again got behind her, bent her hands up, and ordered her to "grab his dick." She again complied.
Based on these facts, defendant was convicted of two counts of felony sexual battery on D.C, assault by a public officer, and attempting to dissuade a witness from testifying.
Defendant also was charged with other offenses against D.C, including rape, and several crimes involving two other victims. However, the jury either found defendant not guilty or was unable to reach a verdict on those other charges.

DISCUSSION

I
Defendant contends the trial court abused its discretion in allowing the prosecutor to present evidence of uncharged sexual offenses that defendant committed against R.P., AM., and A.E. *

A
R.P. testified that she called the police in March 2001 when her home was burglarized. Defendant responded and took the report. After R.P. saw him over a month later at the courthouse, defendant returned unexpectedly to her home, in uniform *449 in his patrol car, while she was standing outside. Defendant called her to come to the patrol car. She complied and leaned on the open driver side window of the car. After defendant talked with her for a moment, he "grabbed [R.P.'s] hand and placed it down on his groin area" over his pants. Feeling his erect penis, she immediately pulled her hand away. Defendant told her not to tell anyone about the incident. On several other occasions, defendant came back to R.P.'s house in his patrol car and repeatedly instructed her not to tell anyone about what he had done. The last contact that R.P. had with defendant was in December 2001, when he came up to her at night in his patrol car as she was in an alley walking home. He told her to get into the patrol car. She did so because she was afraid to refuse. As she sat in the passenger seat, defendant said, "You're going to give me a blow job." R.P. refused and attempted to get out of the car, but defendant grabbed her and pulled her head down onto his penis. She tried to keep her mouth closed, but defendant kept pulling it against his penis until she opened her mouth and he put his penis into it. When the headlights of another car appeared down the alley, defendant told R.P. to get up because someone was coming. He then pushed her out of the patrol car, causing her to fall to the ground. Although she told her mother what had happened, R.P. did not report it to the police department because she was scared of defendant. She later revealed the incidents only after she was contacted by an officer who was investigating allegations of misconduct by defendant.
A.M. testified that she and a friend were stopped by defendant in 2001, while they were driving a stolen vehicle. He handcuffed A.M. and put her in his patrol car. Instead of taking A.M. to jail, defendant said he would drive her home. When he let her out of the patrol car, defendant pinned A.M. against the car, squeezed her breasts and nipples, rubbed her vagina through her pants, and "just groped [her] all over." He then took off the handcuffs and let her go, telling her that he "saved [her] ass" because she had outstanding warrants for her arrest. On several other occasions while he was on patrol, defendant came up to A.M. as she was walking along Del Paso Boulevard. He would say "nasty things" to her and told her that he "wanted [her] to suck his dick." A.M. did not report these incidents because she had warrants out for her arrest and did not want to go to jail. It was not until she saw news accounts about defendant having sexually assaulted other women that A.M. called the district attorney's office to say what had happened to her.
A.E. testified that her first contact with defendant was when he responded to a complaint that A.E. and others were "being too loud" in a park near an apartment complex. He patted her down, between her legs and on her breasts; in her words, he "was groping around my breast, like grabbing it." In September 2001, A.E. was stopped by defendant while she was walking at night to a friend's house. He was in uniform and in his patrol car. After questioning her about where she was going, he asked if she had a boyfriend. When she replied, "no," defendant asked, "well, do you like girls?" Again, she replied, "no," whereupon defendant asked if she would give him a "blow job." A.E. said "no" and told him that he was "stupid." Defendant then stated he had a "big cock" and asked if she wanted to see it. A.E. said she had to leave and started walking away. Defendant put his car into reverse, reached out, and grabbed her wrist to stop her. He told her not to tell anyone about what had occurred. Nevertheless, A.E. mentioned the incident to her cousin. On another occasion, while A.E. *450 and her cousin were talking outside an apartment, defendant walked up and pulled A.E. aside. He asked when she was going to be 18. She said in a year. Defendant then asked if it was possible for them to get together after she turned 18. A.E. simply laughed and walked away. When A.E. and her cousin saw news reports of defendant's sexual molestation of other women, A.E. told her mother what had happened. Her mother then called the police department and reported what had occurred with defendant and A.E.

B
In defendant's view, the fact that the prosecutor chose not to formally charge him with committing crimes against R.P., A.M., and A.E. means the prosecutor deemed their accusations "insufficiently reliable to use [against defendant]." It follows, he argues, their testimony should have been excluded because he "should not have been convicted based on allegations of persons whose testimony was not sufficiently reliable to serve as the foundation for criminal charges or withstand probable cause review."
Aside from the fact that defendant's premise is unsound,[1] his legal position lacks merit. In effect, it would mean that evidence of uncharged crimes could never be introduced against a defendant simply because the prosecutor had chosen not to formally charge the defendant with those crimes. That, however, is not the law.
Evidence Code section 1108 is an exception to the general rule that "evidence of a person's character or trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid.Code, § 1101, subd. (a); further section references are to the Evidence Code unless otherwise specified.)
Subdivision (a) of section 1108 states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352 [which gives the trial court discretion to exclude evidence if its probative value is outweighed by the probability that its introduction would require an undue consumption of time or would create a substantial danger of undue prejudice, confusing the issues, or misleading the jury]."
On its face, the statute applies to evidence of prior sexual offenses without regard to whether defendant was ever formally charged with the commission of those offenses.

C
In a creative argument, defendant asserts that section 1108 allows the introduction of other sexual offenses evidence to show his "disposition" to commit the charged crime, rather than his "character." According to defendant, "character" and "disposition" are distinguishable and refer to different "distinct properties of the human personality," i.e., disposition refers to the "`prevailing aspect of one's nature [a genial disposition],'" whereas character "`is applied to the sum of moral qualities associated with a distinctive individual [a *451 weak character](Italics omitted.) Defendant concedes that evidence of a person's character "is not subject to expert analysis." However, he claims, the "avenue for introduction of evidence of disposition is through a properly qualified expert witness, or in some limited circumstances through the introduction of lay opinion testimony." Thus, he argues, without expert testimony that the evidence of defendant's other sexual offenses shows he "had a predisposition to commit sexually deviant acts with females, ... the other crimes evidence should not have been permitted."
Again, defendant reads something into the statute that does not exist, namely, in the words of his counsel, evidence of other sexual offenses is not admissible "without the filter of a qualified expert opinion."
By enacting section 1101, the Legislature determined that "propensity evidence," i.e., a defendant's "disposition to commit [criminal acts]," ordinarily should be inadmissible "`"not because it has no appreciable probative value, but because it has too much." ... [Citations.]' [Citations.]" (People v. Falsetta (1999) 21 Cal.4th 903, 911, 912, 915, 89 Cal.Rptr.2d 847, 986 P.2d 182; original italics.) However, by enacting section 1108, the Legislature determined that in prosecutions for the commission of sexual offenses, "`the policy considerations favoring the exclusion of evidence of uncharged sexual offenses are outweighed ... by the policy considerations favoring the admission of such evidence. The Legislature has determined the need for this evidence is "critical" given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial. [Citation.]' [Citations.]" (Id at pp. 911-912, 89 Cal. Rptr.2d 847, 986 P.2d 182.)
The language of section 1108 does not say that other sex crimes evidence must be introduced by way of expert testimony regarding the defendant's predisposition to commit sexual offenses. (People v. McFarland (2000) 78 Cal.App.4th 489, 494, 92 Cal.Rptr.2d 884 ["section 1108 authorizes evidence of a defendant's uncharged acts in certain cases, but says nothing about opinion evidence regarding character"].) Nor is such a requirement necessary, because the probative value of other sex crimes evidence is a matter of common sense and common experience; a person need not be an expert to understand that one who commits a sex offense may be predisposed to commit more sex offenses in the future. It is readily apparent that "`the willingness to commit a sexual offense is not common to most individuals,'" and that sex offenders often are recidivists; thus, the fact that a defendant has committed a prior sexual offense is "`"evidence of the defendant's disposition to commit such crimes, [which has a] bearing on the probability or improbability that [he or she] has been falsely or mistakenly accused of [committing another] such an offense."' [Citation.]" (People v. Falsetto, supra, 21 Cal.4th at p. 912, 89 Cal. Rptr.2d 847, 986 P.2d 182.)
Indeed, in a sex crime prosecution, a prosecutor is not allowed to present expert testimony regarding a defendant's predisposition to commit sexual offenses, unless it is offered to rebut similar evidence presented by the defense to show that the defendant is not predisposed to commit such crimes. (People v. McFarland supra, 78 Cal.App.4th at pp. 493-496, 92 Cal.Rptr.2d 884 [rejecting a claim that section 1108 "authorized] ... opinion [evidence of] sexual propensity during the prosecution's case-in-chief"; noting, instead, that the statute "authorizes only the 'specific act' variety of character evidence"].)

*452 D
In another attack on the other uncharged sex crimes evidence, defendant claims that its prejudicial effect outweighed its probative value and, thus, the trial court abused its discretion under section 352 by not excluding the evidence.
According to defendant, the evidence had little probative value for three reasons.
First, he reiterates his claim that the prosecutor's decision not to formally charge defendant with offenses based on the other crimes evidence means the evidence was unreliable. We already have rejected that claim. (See fn. 1, ante.)
Second, he suggests the evidence was not believable because R.P., A.M., and A.E., "like some of the charged victims, were motivated at least in part by hopes of suing the defendant and the City for [the individuals'] victimization." However, of the three women, only R.P. had filed suit against defendant and the City of Sacramento at the time; of trial. In any event, the fact that the women may have intended to seek damages by way of a civil proceeding does not necessarily mean their testimony had little probative value; it simply was a factor for the jury to consider in assessing their credibility.
Third, he argues the testimony of each of the three women was "weak" as discussed below.
In defendant's view, much of R.P.'s testimony was "inconsistent" and "indicated that the conduct that she described was consensual." He also says "her allegation involved oral copulation, a claim not made by other alleged victims." We cannot agree that R.P. described consensual acts. Like the other victims, it is apparent that when R.P. complied with defendant's demands, she did so because she was afraid to refuse in that he was a police officer in a position of authority over her or because, as to the alleged oral copulation, defendant physically forced her to comply. There is no merit in defendant's assertion that R.P.'s allegation of oral copulation was a claim not made by other victims; both A.M. and A.E. testified that defendant asked them to orally copulate him, although they refused to do so, and S.S. testified defendant asked her if she liked "giving head." Also, like other victims, R.P. testified that defendant forced her to rub his penis with her hand. The fact R.P.'s testimony was inconsistent in some respects does not support defendant's claim that it had little probative value.
Defendant suggests A.M.'s testimony lacked sufficient probative value because (1) it "was not particularly distinctive or similar to the charged offenses," (2) her initial statement "left out the pertinent detail that she was handcuffed during the alleged contact with [defendant]," and (3) she "had prior convictions for crimes involving dishonesty." Contrary to defendant's claim, the conduct described by A.M. was very much like that committed by defendant on the other victims; he "groped" her "all over," squeezing her breasts and nipples and rubbing her vagina through her pants, and he said "nasty things" to her, including that he "wanted [her] to suck his dick." Although A.M.'s initial statement to police did not include every detail about defendant's sexual assaults, and she had committed crimes of dishonesty, the trial court did not abuse its discretion in determining that her testimony had probative value if believed by the jury.
Defendant's claim is hollow in asserting that his "patdown" of A.E. "was not inappropriate" and that "[t]here was some verbal banter between the two [on other occasions], but there was no alleged physical conduct to indicate that it was serious, or *453 related to the acts alleged by the charged victims." During the patdown, he groped and grabbed her "entire breast." AE. initially was not offended because she had never been patted down before. However, this did not make the groping "appropriate." On another occasion while defendant was in uniform and in his patrol car, he asked A.E. to give him a "blow job." A.E. declined, telling defendant he was "stupid." But he persisted, claiming he had a "big cock" and asking if she wanted to see it. When A.E. tried to walk away, defendant grabbed her wrist and told her not to tell anyone about what had occurred. Surely this contact with A.E., a minor, went far beyond verbal banter and involved serious misconduct akin to his sexual assaults on the other victims. The trial court acted well within its discretion in finding the testimony to have substantial probative value.
We also reject his contention that the probative value of the other crimes evidence was outweighed by its prejudicial effect. Characterizing the testimony of R.P., A.M., and A.E. as "misleading and distracting," defendant accuses the prosecutor of "piling on" by "creating] an avalanche of accusations, inviting the jury to convict on some counts as a means of compromise and not because any of the charged victims were worthy of belief." We find nothing misleading or distracting in the evidence; all the victims described similar conduct by defendant, utilizing his position of authority to take sexual advantage of relatively vulnerable women. And defendant is wrong in asserting that the multiple allegations of wrongdoing invited the jurors to convict based upon compromise rather than upon the believability of the victims. Absolutely nothing supports this claim; indeed, defendant's appellate efforts to challenge the credibility of the victims is unconvincing. The "prejudice" to which section 352 refers applies to evidence that uniquely tends to evoke an emotional bias against defendant as an individual and that has very little effect on the issues. (People v. Karis (1988) 46 Cal.3d 612, 638, 250 Cal.Rptr. 659, 758 P.2d 1189.) The testimony of R.P., AM., and A.E. was not such evidence. Hence, the trial court correctly denied defendant's section 352 motion to exclude the other crimes testimony.

II
"Every public officer who, under color of authority, without lawful necessity, assaults or beats any person" is guilty of a crime. (Pen.Code, § 149.) An assault includes an unconsented touching of the victim. (1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Crimes Against the Person, §§ 1, 2, pp. 638-639.)
According to defendant, the evidence does not support his conviction for assaulting S.M. under color of authority and without legal necessity. This is so, he argues, because it was S.M. who did the touching when she complied with defendant's direction to "grab [his] dick." In his view, "[t]here was no assault described in [S.M.'s] testimony. [He] did not touch her, and made no effort to touch her. He committed no act which would probably and directly (or even indirectly) result in the application of physical force to [S.M.]"
Surprisingly, the Attorney General agrees that the conviction must be reversed because "[respondent is unable to find any legal authority in support of the position that a command to engage in an offensive touching, even if complied with, is sufficient in itself to constitute an assault."
The District Attorney of Sacramento County, who prosecuted defendant, disagrees and has submitted an amicus curiae *454 brief arguing the crime was committed because, by telling S.M. to grab his penis, defendant caused the performance of an act that directly resulted in a touching of his body with the victim's hand. This, the district attorney asserts, constituted an assault by a public officer, under color of authority, without legal necessity.
We agree with the District Attorney.
Penal Code section 240 defines an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Although this section refers to a "violent injury," any wrongful act committed by means of physical force will suffice. (People v. McCoy (1944) 25 Cal.2d 177, 191, 153 P.2d 315; People v. Whalen (1954) 124 Cal.App.2d 713, 720, 269 P.2d 181.) "`"The kind of physical force is immaterial; ... it may consist in the taking of indecent liberties with a woman, or laying hold of and kissing; her against her will."'" (People v. Bradbury (1907) 151 Cal. 675, 677, 91 P. 497.) Without question, an offensive touching, such as the fondling of a person's sexual organs, will support a conviction for assault or battery. (People v. Bard (1968) 70 Cal.2d 3, 6, 73 Cal.Rptr. 547, 447 P.2d 939.)
"A defendant can commit a battery indirectly by causing the force to be applied to the person of another [citation] and thus can be guilty of indirect assault as well." {People v. Wright (1996) 52 Cal.App.4th 203, 210, fn. 17, 59 Cal. Rptr.2d 316.) As explained in Commonwealth v. Stratton (1873) 114 Mass. 303 [1873 WL 12016]: "Although force and violence are included in all definitions of assault, or assault and battery, yet, where there is physical injury to another person, it is sufficient that the cause is set in motion by the defendant, or that the person is subjected to its operation by means of any act or control which the defendant exerts." (Id. at p. 305 [upheld a conviction for assault where the defendant delivered to the victim figs that contained a foreign substance and the victim ate the figs and became ill].)
Accordingly, if by coercion a defendant causes an unconsented physical touching of a victim, the defendant is guilty of assault and battery even though the defendant does not do the touching. For example, causing force to be applied to a victim by compelling the person to jump from a moving car is the indirect application of force sufficient for an assault and battery. (1 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Crimes Against the Person, § 13, p. 646.) The fact that the victim applied to himself or herself the force that resulted in injury is immaterial if the force was applied against the victim's will because the defendant demanded it and the victim felt compelled to comply. (Cf. People v. Grant (1992) 8 Cal.App.4th 1105, 1112, 10 Cal.Rptr.2d 828 ["There are many situations where one is compelled, i.e., forced, to do something against one's will but the compulsion does not involve personal violence or threats of personal violence. This is especially true when the person involved in the compulsion is an authority figure or posing as a person in authority. The force is a psychological force compelling the victim to comply with the orders of the authority figure"]; see also People v. Mickle (1991) 54 Cal.3d 140, 175-176, 284 Cal.Rptr. 511, 814 P.2d 290[for the purposes of Penal Code section 288, subdivision (a), a person is guilty of a lewd touching if he or she compels the victim to do the touching]; People v. Meacham (1984) 152 Cal.App.3d 142, 152-154, 199 Cal.Rptr. 586; People v. Austin (1980) 111 Cal.App.3d 110, 114-116, 168 Cal.Rptr. 401.)
*455 Here, defendant did not use physical force on S.M. to get her to touch his penis. Instead, he exerted psychological coercion by virtue of his position as a police officer and her situation as a prostitute subject to arrest. S.M. testified she complied with defendant's commands because she was afraid he would take her to jail if she refused. This coercive force was just as effective as if defendant had grabbed S.M.'s hand and forced it onto his penis, as he did with victims L.M. and D.C.[2] (See People v. Grant, supra, 8 Cal.App.4th at p. 1112, 10 Cal.Rptr.2d 828.) Although in this instance, S.M. was the person who did the touching, it cannot reasonably be said that her being coerced into touching defendant's penis was not offensive to S.M.
For these reasons, defendant's actunder color of authority and without lawful justificationof compelling an offensive touching with S.M.'s hand constituted a violation of Penal Code section 149.

III-VII[**]

DISPOSITION
The judgment is affirmed, except that the sentence on count two, sexual battery, is modified to impose the middle term of three years, instead of the upper term of four years, unless the People notify the trial court and defendant's trial counsel that the People request a trial on the aggravating factors used by the court to impose the upper term on count two. The People are directed to notify the trial court and defendant's trial counsel, within 30 days after the remittitur is filed, whether the People request a trial on that issue. If the People do not timely request a trial, the court shall amend the abstract of judgment to show imposition of the middle term of three years on count two, and send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.
We concur: SIMS, and BUTZ, JJ.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III through VII.
[1] Even though a prosecutor believes a victim's accusations are reliable, the prosecutor may decide for good reason not to formally charge a defendant with crimes against the victim. For example, the statute of limitations may have run, or the prosecutor may conclude that, due to the circumstances of the crimes, the evidence would be insufficient to satisfy the burden of proving them beyond a reasonable doubt.
[2] Defendant wisely does not argue that there was no assault on L.M. and D.C.
[**] See footnote *, ante.