Filed 9/28/20  P. v. Alia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GUILLERMO JAVIER ALIA,<br><br>    Defendant and Appellant. | G057585<br><br>(Super. Ct. No. 15CF0494)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed as modified.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Guillermo Javier Alia of six counts of lewd acts committed against children under the age of 14 (counts 1-5, 9; Pen. Code,[1] § 288, subd. (a)); sexual intercourse or sodomy with a child 10 years of age or younger (count 6, § 288.7, subd. (a)); and two counts of oral copulation or sexual penetration involving a child 10 years of age or younger (counts 7, 8; § 288.7, subd. (b)). The jury also found a penalty enhancement applied to the lewd act counts for sex offenses committed against more than one victim. (§ 667.61, subds. (b), (e)(4).) The trial court sentenced Alia to 25 years to life on count 6, consecutive terms of 15 years to life on counts 1, 2, and 3, and concurrent terms of 15 years to life on the remaining counts. As to his sentence, Alia challenges only his custody credits.

Substantively, Alia contends the trial court erred by not sua sponte instructing the jury on simple assault (§ 240) as a lesser included offense of the lewd acts charged—though he recognizes the Supreme Court has held that simple battery is not such a lesser. (*People v. Shockley* (2013) 58 Cal.4th 400 (*Shockley*).) He also argues the testimony of the youngest victim, his granddaughter, regarding counts 6 through 9 was inherently improbable. Finally, he asserts section 654 precluded multiple punishment on counts 1 and 2 involving different acts committed against the same victim. As we explain, Alia's substantive contentions lack merit, but we modify (§ 1260) his sentence to award him additional days of custody credit. In all other respects, the judgment is affirmed.

---

[1] All references are to the Penal Code unless otherwise noted.

## FACTUAL AND PROCEDURAL BACKGROUND

Four of Alia's victims lived in the same apartment complex on North Bush Street in Santa Ana where Alia resided with his wife. Alia sold candy from his apartment, and children regularly visited him there. When C.H. (counts 1 and 2) was nine or 10 years old, she sometimes bought snacks from Alia and Alia's wife, who sometimes babysat her. On one occasion, when Alia's wife was not present, he touched C.H.'s vagina under her jeans while she sat on the bed in his room. Alia also took C.H.'s hand and placed it on his penis, over his clothes. When C.H. went home that day, she did not tell her mother about the incident.

In January 2014, when C.H. was 10 years old, she told her mother that Alia touched her private area, but she stated it occurred when she was five years old. C.H.'s mother reported the incident to school authorities the next day, and then to the police.

When I.R. (count 3) was in first grade, she and a friend would go to Alia's apartment to watch television. I.R. testified Alia sometimes took them to his bedroom, where he touched her vaginal area. On one occasion, he touched inside her vagina; other times he touched outside her vagina, but under her clothes. In November 2014, after a family bible study, when I.R. was approximately nine years old, she tearfully told her mother about Alia touching her. Her mother contacted I.R.'s school and the police, and a police officer later interviewed both of them.

When J.G. (count 4) was 13 years old and her friend F.L. (count 5) was 9 or 10 years old, they regularly bought candy together at Alia's apartment. On one occasion, Alia gave J.G. a piece of paper with his phone number on it. He invited her to text or call him if she ever needed a ride or money and placed his hand on her lower waist as she walked out of the apartment.

A few days later, Alia told J.G. that her "body . . . wasn't [her] age" and touched her inner thigh while she was wearing shorts. J.G. testified Alia was "grabbing [her] and went into [her] inner thigh" close to her vaginal area. She said he did not touch

3

her vagina "because [she] moved" and "backed up." When Alia touched her thigh, he told her she was beautiful and had a maturing body.

A police officer interviewed J.G. and her mother in November 2014. They gave the officer the paper Alia gave J.G. with his telephone number. In a follow-up interview, in February 2016, J.G. told the detective that Alia flirted with her by calling her beautiful, stating she had a nice body, and by pulling her earlobes and touching her cheeks. J.G. confirmed Alia touched her upper thigh and gave her his phone number.

F.L. was interviewed by the police in November 2014. She testified the last time she visited Alia's apartment (a month prior to the interview), he touched her "inner thigh" over her pants, "rubbing it" "where [her] vagina and [her] leg connect[]." She did not visit Alia's apartment again. On earlier visits, Alia told F.L. she was beautiful—one of the prettiest girls in the apartment complex. On one occasion when she was playing hide and go seek outside, Alia spoke to her in Spanish and kissed her on the forehead. He said, presumably of the children she was playing with, "They're going to rob you." On a visit to Alia's apartment with J.G., F.L. saw Alia give J.G. the paper with his number. She testified Alia told the girls to contact him if they needed anything.

Alia was E.A.'s (counts 6-9) paternal grandfather. E.A. and her brother stayed at Alia's home on weekends. E.A., who was in seventh grade at the time of trial, testified that when she was in fourth or fifth grade, Alia touched her inappropriately on several overnight visits. During these visits, Alia would sleep on the floor with E.A. and her brother, while her grandmother and an uncle would sleep on a bed in the same room.

On more than one occasion, Alia touched the inside and outside areas of E.A.'s vagina and placed his mouth on her vaginal area. He also put his penis inside E.A.'s vagina. She testified it "hurt" and felt like it "burned." Alia sometimes made E.A. touch his penis with her hand. E.A. said she did not initially disclose the abuse because she was scared. But in December 2017, when E.A. was 11 years old, she told her mother she did not want to go with her father because she was afraid he would take her to Alia's

4

apartment. After learning of the abuse, E.A.'s mother contacted a social worker and then the police.

Apart from J.G., the oldest at age 13, the four younger victims were interviewed after their respective reports by a senior social worker for the Orange County Child Abuse Services Team (CAST). A video recording of each interview was played for the jury.

A police sergeant first interviewed Alia in March 2015. Alia acknowledged he knew the girls from the apartment complex, except for I.R., whose name he did not recognize. He denied touching them; the phone number he gave the sergeant matched the one he gave J.G.

A detective interviewed Alia in jail in June 2018 regarding E.A.'s accusations of abuse. When the detective asked whether E.A. was lying when she stated that Alia touched her sexually, Alia first responded, "'I don't know.'" Later, in the same interview, he stated, "'It was a lie.'"

The defense did not present any witnesses. The jury returned its verdict as noted above, and Alia now appeals.

**DISCUSSION**

1. *Lesser Included Instruction*

Alia contends the trial court erred in failing to instruct the jury on simple assault (§ 240) as a lesser included offense of the lewd act charges in counts 4 and 5, which involved, as he phrases it, his alleged brief touching "up high" on J.G.'s and F.L.'s thighs. In a colloquy with the trial court and the prosecutor, defense counsel considered but eschewed instruction on simple assault, concluding, "I mean, if anything, that conduct could be a battery, but I also know battery is not a lesser-included." Defense counsel was apparently alluding to the *Shockley* case, in which the Supreme Court held that simple

5

battery is not a lesser included offense of lewd and lascivious conduct with a child under 14 years old. (*Shockley*, *supra*, 58 Cal.4th at p. 406.)

Alia argues his trial attorney erred in not requesting a simple assault instruction, rendered ineffective assistance of counsel (IAC) in failing to do so, and that the trial court had a sua sponte duty to give the instruction. We first address the court's instructional duty.

In a criminal case, a trial court must instruct on the general principles of law relevant to the issues raised by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) A trial court has a sua sponte duty to instruct the jury on all theories of a lesser included offense that find substantial support in the evidence. "Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense." (*Shockley*, *supra*, 58 Cal.4th at p. 403.)

We review claims of instructional error de novo. (*People v. Nelson* (2016) 1 Cal.5th 513, 538; *People v. Shaw* (2002) 97 Cal.App.4th 833, 838.) The invited error doctrine does not apply to preclude review if trial counsel made the error in lulling a trial court not to give an instruction out of counsel's ignorance or mistake, rather than for a tactical reason. (*People v. Lara* (2001) 86 Cal.App.4th 139, 165.) Alia asserts his trial attorney erred in not requesting the simple assault instruction, and the trial court erred in failing to give it.

In our view, given *Shockley*'s holding that simple battery is not a lesser included offense of lewd acts against a minor (§ 288, subd. (a)), it is likely the same is true for simple assault. Nevertheless, we need not resolve the issue because we need not decide whether the instruction on simple assault was required.

The state law standard for harmless error applies to instructional error. "Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of." (*People v. Rogers* (2006)

6

39 Cal.4th 826, 868.) Moreover, omission of an instruction is harmless beyond a reasonable doubt if the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. (*People v. Merritt* (2017) 2 Cal.5th 819, 831-832.) Put another way, there is no possible prejudice from an omitted instruction when the jury "necessarily rejected" the defense's theory. (*People v. Seaton* (2001) 26 Cal.4th 598, 664-665, 669.)

That is the case here. Section 240 defines an assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." The term "violent injury" is not synonymous with "bodily harm," but includes "any wrongful act committed by means of physical force against the person of another." (*People v. Whalen* (1954) 124 Cal.App.2d 713, 720.) In committing an assault, the defendant need not make contact with the victim's body; it is the *attempted* use of force that constitutes simple assault (§ 240), while simple battery is "any willful and unlawful *use* of force or violence upon the person of another." (§ 242, italics added.)

Thus, "[e]very completed battery includes an assault, but if the assailant does not go beyond the attempted use of force or violence, then assault has been committed without battery." (*People v. Yeats* (1977) 66 Cal.App.3d 874, 878.) Similarly, "[a]n assault is an incipient or inchoate battery," and "a battery is a consummated assault." (*People v. Colantuono* (1994) 7 Cal.4th 206, 216, superseded by statute on another ground as stated in *People v. Conley* (2016) 63 Cal.4th 646, 660, fn. 4.)

Here, the court instructed the jury on attempted lewd act upon a child under 14 as a lesser included offense for counts 4 and 5; the jury rejected that alternative verdict. Instead, the jury convicted Alia of lewd acts committed against J.G. and F.L. (§ 288, subd. (a)), which the court instructed the jury required a completed touching. (CALCRIM No. 1110.) Thus, the jury resolved against Alia the factual matter at issue in the assault instruction he claims was necessary. Any error in not providing the assault

7

instruction was therefore harmless. Alia's IAC claim therefore is also without merit, for lack of prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.)

    2.    *Sufficiency of the Evidence*

Alia challenges the sufficiency of the evidence to support counts 6 through 9 involving his granddaughter, E.A., because he argues her testimony was inherently improbable. The standard is high for such claims, and Alia does not meet it.

"While an appellate court can overturn a judgment when it concludes the evidence supporting it was 'inherently improbable,' such a finding is so rare as to be almost nonexistent." (*People v. Ennis* (2010) 190 Cal.App.4th 721, 728 (*Ennis*).) "The inherently improbable standard addresses the basic content of the testimony itself—i.e., could that have happened?—rather than the apparent credibility of the person testifying." (*Id.* at p. 729.) "In other words, the challenged evidence must be improbable '"on its face."'" (*Ibid*.) "The only question is: Does it seem *possible* that what the witness claimed to have happened actually happened?" (*Ibid*.)

Alia casts as fatal flaws in E.A.'s testimony the fact that other people were in the bedroom at the time of the offenses and differences between her testimony and her CAST interview. For instance, in the CAST interview E.A. stated she would tell Alia to stop or even scream at him, while in her testimony she "sometimes" told Alia to stop and did not say it "loud." Like the alleged acts committed when others were sleeping nearby, Alia paints as inherently improbable E.A.'s claim in her CAST interview that Alia touched her private parts while sitting next to her at her birthday party. He also focuses on her CAST interview statements claiming to wear not only long-sleeved pajamas when Alia digitally penetrated her anus, but also underwear and shorts.

The jury is the sole judge of witness credibility; it is entitled to resolve conflicts in the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) The jury was not required to credit every statement E.A. made to convict Alia of sexual intercourse with a minor and two counts of oral copulation. The trier of fact is "free to believe some

8

of [the witness's] statements and to disbelieve other[s]." (*People v. Wader* (1993) 5 Cal.4th 610, 641.) E.A.'s testimony supported Alia's conviction for these counts where she testified he placed his penis inside her vagina, which "hurt" and "burned," and she testified he placed her mouth on her vagina on more than one occasion. It was not inherently improbable or physically impossible that others could be in the room when these acts occurred. E.A. testified that she knew her grandmother was sleeping because she could hear her "snoring." Because the "jury found the abuse claims . . . to be credible despite the weaknesses [appellant] points to on appeal," this court "cannot second-guess that determination." (*Ennis*, *supra*, 190 Cal.App.4th at p. 730.) Alia's challenge therefore fails.

3.       *Section 654*

Finally, Alia contends section 654 precluded multiple punishments for his offenses against C.H. We disagree.

Section 654, subdivision (a), provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 "applies when there is a course of conduct which violates more than one statute but constitutes an indivisible transaction." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) Generally, whether a course of conduct is a divisible transaction depends on the intent and objective of the actor: "If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of* California (1960) 55 Cal.2d 11, 19.)

The Supreme Court has determined that generalized claims of an overarching, all-encompassing intent to obtain sexual gratification do not fall under section 654. "To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to

9

insure that a defendant's punishment will be commensurate with his culpability." (*People v. Perez* (1979) 23 Cal.3d 545, 552 (*Perez*).)  As the Supreme Court later explained, "[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations.  Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed.  [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6 (*Scott*).)  Otherwise, a "clever molester could violate his victim in numerous lewd ways, safe in the knowledge that he could not be convicted and punished for every act." (*Id.* at p. 347.)  We find it improbable the Legislature would have intended this result, particularly with younger victims.   (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006 (*Alvarez*).)

As *Scott* noted, under section 654, courts do not assume fondling offenses are incidental to other sex crimes within the meaning of section 654, or exempt from separate punishment.  "The newer cases tend to focus on evidence showing that the defendant independently sought sexual gratification each time he committed an unlawful act." (*Scott*, *supra*, 9 Cal.4th at pp. 347-348, fn. 9.)  Thus, courts have upheld multiple punishments for separate touchings occurring during a single incident.  (E.g., *Alvarez*, *supra*, 178 Cal.App.4th at pp. 1006-1007 [kissing before penetration and fondling was a separate and distinct act designed to arouse defendant, warranting multiple punishment].)

"A defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable than a defendant who commits only one such act." (*Perez*, *supra*, 23 Cal.3d at p. 553.)  Thus, section 654 "does not prohibit the imposition of multiple punishment for separate sexual offenses committed during a continuous attack, 'even where closely connected in time.'" (*People v. Hicks* (1993) 6 Cal.4th 784, 788, fn. 4.)  Offenses committed during a seven-to-ten-minute attack may be found to have been committed for defendant's separate gratification in each.  (*People v. Harrison* (1989) 48 Cal.3d 321, 336-338.)

Here, Alia's convictions in counts 1 and 2 were based on two separate and distinct acts.  As the prosecutor explained in closing argument, count 1 was based on Alia touching C.H.'s vagina under her jeans, and count 2 was based on him taking C.H.'s hand and placing it on his penis.  Neither of the two offenses was committed as a means of committing the other, neither offense facilitated the commission of the other, and neither offense was incidental to the commission of the other.  (*Perez*, *supra*, 23 Cal.3d at pp. 553-554.)  Section 654 therefore did not preclude punishment for each of the sexual offenses that Alia committed against C.H.  (*Id.* at p. 554.)

## DISPOSITION

The Attorney General concedes Alia is entitled to three additional days of custody credit, based on the actual days he was in custody from his arrest to the date of sentencing.  We therefore correct the judgment (§ 1260) to reflect 1,458 days of actual custody credit, rather than 1,455 days.  Alia's conduct credit (218 days) remains the same.  We direct the trial court to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.  In all other respects the judgment is affirmed.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

11